IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CST INDUSTRIES, INC.,

     Plaintiff,

     v.                            Case No. 23-2339-JAR-RES

TANK CONNECTION, L.L.C., et al.,

     Defendants.

## MEMORANDUM AND ORDER

This case involves two business rivals seeking to become the roof subcontractor for a large municipal project to construct a drinking water reservoir for the City of Richmond, Virginia.  Plaintiff CST Industries, Inc. ("CST") brings claims against its competitor, Tank Connection, L.L.C. ("Tank"); as well as Tank's Liquid Market Manager, Jordan LaForge; and the general contractor for the project, Crowder Construction, Inc. ("Crowder").  CST's Amended Complaint alleges several tort claims against Defendants under Missouri law.[1]  Tank asserts two counterclaims against CST: (1) attempted monopolization under § 2 of the Sherman Act; and (2) unfair competition under Kansas law.[2]  Before the Court is CST's Motion to Strike and/or Dismiss Defendant Tank Connection, LLC's Counterclaims (Doc. 135).  The motion is fully briefed and the Court is prepared to rule.  For the reasons discussed below, the Court grants CST's motion to strike the unfair competition claim and its motion to dismiss the Sherman Act claim.

---

[1] Doc. 38.

[2] Doc. 160 at 57–66.  Tank filed its First Amended Answer and Affirmative Defenses to Plaintiff's First Amended Complaint and Counterclaims Against Plaintiff CST Industries, Inc. on March 29, 2024, after the motion to strike and/or dismiss became ripe.  *See* Doc. 160.  This document merely corrects a typographical error in the original document and the parties agree that it does not render moot the pending motion to strike and/or dismiss. Doc. 159.

## I.     Standards

Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[3]  "A defense is insufficient if no circumstances exist under which it can succeed as a matter of law."[4]  "The decision to grant a motion to strike is within the district court's sound discretion."[5]

A motion to dismiss a counterclaim for failure to state a claim is evaluated under the same standard as a motion to dismiss a complaint.[6]  Under Rule 12(b)(6), "only a [counterclaim] that states a plausible claim for relief survives a motion to dismiss."[7]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[8]  Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[9]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all of the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[10]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of

---

[3] Fed. R. Civ. P. 12(f).

[4] *Falley v. Friends Univ.*, 787 F. Supp. 2d 1255, 1257 (D. Kan. 2011) (citing *Wilhelm v. TLC Lawn Care, Inc.*, No. 07-2465-KHV, 2008 WL 474265, at *2 (D. Kan. Feb. 19, 2008)).

[5] *Kendall State Bank v. W. Point Underwriters, L.L.C.*, No. 10-2319-JTM, 2012 WL 3890264, at *2 (D. Kan. Sept. 7, 2012) (citing *Falley*, 787 F. Supp. 2d at 1257).

[6] *Jones v. Addictive Behav. Change Health Grp., LLC*, 364 F. Supp. 3d 1257, 1265 (D. Kan. 2019) (citation omitted).

[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[8] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*., 550 U.S. at 555).

[9] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

[10] *Id.* (quoting *Twombly*, 550 U.S. at 555).

truth, or merely legal conclusions that are not entitled to an assumption of truth.[11]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[12]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13]

## II.    Facts

The following facts from the Amended Answer and Counterclaim are accepted as true and viewed in the light most favorable to Tank.

The facts of this case relate to the City of Richmond, Virginia's ("the City") choice of subcontractor for the design, manufacture, and installation of the roof for a 55-million-gallon drinking water reservoir ("Byrd Park Project").  At the time the City opened up bidding on construction, CST was one of three potential roof subcontractors preapproved by the City.  CST claims to be the largest dome and storage tank manufacturer in the world, increasing their market share of the dome and storage tank industry in 2008 and 2009 when it acquired Conservatek Industries, Inc. and Temcor, Inc., respectively.

The City required triangulated, rectangular, flat column-supported roof structures for the Project.  CST is one of the few companies in the United States that designs, manufactures and constructs this type of roof.  Indeed, CST is estimated to have over 90% of the market share in the United States for triangulated, rectangular, flat column-supported aluminum roofs. Opportunities for triangulated, rectangular, flat column-supported roofs in the United States are

---

[11] *Id.* at 678−79.

[12] *Id.* at 679.

[13] *Id.* at 678.

extremely limited and jobs similar to the Byrd Park Project only present themselves once every five to seven years.

Tank, a competitor of CST's, designs, manufactures and constructs storage containment products worldwide, including aluminum flat roof covers. Tank was not preapproved by the City on the Byrd Park Project, and was not selected by any of the general contractors who submitted bids. Nevertheless, Tank presented a qualification package to the general contractors submitting bids to the City, including Crowder, who was ultimately chosen as the general contractor by the City. CST alleges in its Amended Complaint that the qualification package Tank submitted included misrepresentations about its experience and qualifications, including passing off projects that had been performed by CST as its own based on former CST employees Steve Ducotey and Casey Whalen's involvement in those projects.

Ultimately, CST was unable to fulfill Crowder's bond requirement for the Project, which led Crowder to look for other potential subcontractors who could replace the roof and fully bond the project. After many submissions, meetings, and questions answered, Crowder chose Tank as the subcontractor to replace the Byrd Park Reservoir roof.

Since 2016, CST has filed several lawsuits seeking to enforce noncompetition agreements and recover from competitors based on allegations that they used photographs of CST projects to market their own products. CST filed this lawsuit on August 3, 2023.[14] In the Amended Complaint, CST alleges (1) tortious interference with contract against Tank and Crowder; (2) violations of the Defend Trade Secrets Act ("DTSA") against Tank and Crowder; (3) tortious interference with business expectancy against Tank and LaForge; (4) civil conspiracy against

---

[14] Doc. 1.

Tank and Crowder; (5) aiding and abetting against Tank and Crowder; and (6) unfair competition against all Defendants.[15]

CST moved for a preliminary injunction, seeking to enjoin Crowder and Tank from installing the roof on the project.[16]  The Court held an evidentiary hearing on March 11 and 12, 2024, and ultimately denied the motion.[17]  In that Order, the Court considered the evidence presented by the parties in support of CST's claims for tortious interference with business expectancy and unfair competition under Missouri law.  As part of its ruling, the Court determined that CST was not likely to succeed on those claims.

Tank and LaForge moved to dismiss several of CST's claims.  The Court granted in part and denied in part those motions, finding that CST failed to state a plausible claim for misappropriation of trade secrets and aiding and abetting, as alleged in Counts II and V of the Amended Complaint.

Tank alleges two counterclaims against CST: (1) a claim under § 2 of the Sherman Act alleging that CST used this "sham" litigation to deter competition; and (2) unfair competition under Kansas law, based on CST's past practice of purchasing competitors, colluding with other tank suppliers, and suing competitors to hobble competition.  CST now moves to dismiss both claims for failure to state a claim upon which relief can be granted.

**III.    Discussion**

In its Sherman Act claim, Tank claims that CST is attempting to secure monopoly power in the aluminum, flat column-supported cover industry in the United States by filing the instant lawsuit against Tank, and in order to interfere with Tank's business practices in this limited

---

[15] Doc. 38.

[16] Doc. 64.

[17] Doc. 181.

market.  Tank alleges that CST's claims are objectively and subjectively baseless given that CST

was not awarded the subcontract for the Project due to its inability to bond the Project.  In its

unfair competition claim, Tank claims that CST's conduct, including filing this lawsuit,

interfered with its ability to conduct business and irreparably harmed its clients, goodwill,

revenues, profits, and caused diminution in the value of its business.

CST first moves to strike both claims under the Kansas anti-SLAPP (Strategic Lawsuits

Against Public Participation) statute.  Alternatively, CST moves to dismiss under Rule 12(b)(6)

based on the *Noerr-Pennington* doctrine and failure to state a claim.

### A.      Motion to Strike

"An anti-SLAPP statute is a specialized version of the tort of abuse of process, designed

to reduce defense costs by creating an absolute or qualified immunity, and (in several states) by

requiring early disposition of a motion to dismiss."[18]  Kansas's anti-SLAPP statute, the Kansas

Public Speech Protection Act ("KPSPA"), became law in 2016,[19] in order to "prevent meritless

lawsuits that chill free speech."[20]  Under subsection (d) of the statute,

> A party may bring a motion to strike the claim if a claim is based
> on, relates to or is in response to a party's exercise of the right of
> free speech, right to petition or right of association.  A party
> bringing the motion to strike has the initial burden of making a
> prima facie case showing the claim against which the motion is
> based concerns a party's exercise of the right of free speech, right
> to petition or right of association.  If the moving party meets the
> burden, the burden shifts to the responding party to establish a
> likelihood of prevailing on the claim by presenting substantial
> competent evidence to support a prima facie case.  If the
> responding party meets the burden, the court shall deny the motion.
> In making its determination, the court shall consider pleadings and
> supporting and opposing affidavits stating the facts upon which the

---

[18] *Orchestrate HR, Inc. v. Blue Cross Blue Shield Kan.*, No. 19CV04007HLTTJJ, 2019 WL 6327591, at *1
(D. Kan. Nov. 26, 2019) (quoting *Intercon Sols., Inc. v. Basel Action Network*, 791 F.3d 729, 730 (7th Cir. 2015)).

[19] K.S.A. § 60-5320.

[20] *Doe v. Kan. State Univ.*, 499 P.3d 1136, 1143 (Kan. Ct. App. 2021).

liability or defense is based.  If the court determines the responding party established a likelihood of prevailing on the claim: (1) The fact that the court made that determination and the substance of the determination may not be admitted into evidence later in the case; and (2) the determination does not affect the burden or standard of proof in the proceeding.  The motion to strike made under this subsection may be filed within 60 days of the service of the most recent complaint or, in the court's discretion, at any later time upon terms it deems proper.  A hearing shall be held on the motion not more than 30 days after the service of the motion.[21]

Federal courts in this district have applied the substantive provisions of the KPSPA when sitting in diversity.[22]  CST argues that Tank's claims in this case, which are based on CST's filing of this lawsuit, violate CST's right to petition under K.S.A. § 60-5320(c)(5)(A)(i).  Tank responds that the KPSPA does not apply to its federal claim under the Sherman Act, and that Tank has provided substantial competent evidence demonstrating a prima facie case of unfair competition under Kansas law.

### 1.    Sherman Act Claim

Tank argues that the substantive provisions of the KPSPA do not apply to federal claims under the *Erie* doctrine.  The Court agrees.  This Court exercises jurisdiction over the Sherman Act claim under 28 U.S.C. § 1331, which governs federal question jurisdiction.  But assuming this Court's diversity jurisdiction over the other non-federal claims in this matter triggers the *Erie* doctrine, it counsels that "[e]xcept in matters governed by the Federal Constitution or by

---

[21] K.S.A. § 60-5320(d).

[22] *See Caranchini v. Peck*, 355 F. Supp. 3d 1052, 1061 (D. Kan. 2018); *Zaid v. Boyd*, No. 22-1089-EFM, 2022 WL 4534633, at *5 (D. Kan. Sept. 28, 2022); *United Cap. Mgmt. of Kan., Inc. v. Nelson*, No. 22-4008-JWB, 2023 WL 2242155, at *2 (D. Kan. Feb. 27, 2023).  These courts have not, however, applied the procedural requirements under the statute that the court hold a hearing within 30 days and stay discovery.  *See, e.g.*, *Caranchini v. Peck*, 355 F. Supp. 3d at 1061.  This Court likewise declines to apply these procedural requirements and finds that a hearing is not necessary for the Court to decide this motion to strike.

acts of Congress, the law to be applied in any case is the law of the state."[23]  Here, the Sherman

Act claim is governed by a federal statute, so the Court does not apply state law.

CST cites *Doe v. Kansas State University*,[24] a Kansas Court of Appeals decision applying

the KPSPA in a case alleging several state law claims and a federal claim under the Federal

Educational Rights and Privacy Act ("FERPA").  But the Kansas courts in that case did not

apply the KPSPA to the plaintiff's FERPA claim.  Instead, the plaintiff argued on appeal that

FERPA protected her claims from dismissal by prohibiting the disclosure of information in the

email communication at issue.[25]  The district court found that the defendants did not violate

FERPA, and the Kansas Court of Appeals affirmed.[26]  Thus, that federal statute "d[id]not impact

[the Kansas Court of Appeals'] analysis of the motions to strike" under the KPSPA.[27]  The Court

denies CST's motion to strike the Sherman Act claim.

## 2.    Unfair Competition Claim

On CST's motion to strike the unfair competition claim, Tank does not dispute that the

KPSPA applies.  Thus, CST "has the initial burden of making a prima facie case showing" that

the unfair competition claim concerns its "exercise of the right of free speech, right to petition or

right of association."[28]  Tank does not dispute that CST meets this initial burden by showing that

---

[23] *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).

[24] 499 P.3d 1136 (Kan. Ct. App. 2021).

[25] *Id.* at 1144–45.

[26] *Id.* at 1145.

[27] *Id.* at 1146.

[28] K.S.A. § 60-5320(d).

the claim relates to its exercise of the right to petition since it targets CST's filing of this lawsuit and the claims asserted therein.[29]

Therefore, "the burden shifts to [Tank] to establish a likelihood of prevailing on the claim by presenting substantial competent evidence to support a prima facie case."[30]  The parties agree that Kansas law applies to Tank's unfair competition claim, and that Kansas law recognizes a claim for unfair competition.[31]  Courts in this district have predicted that Kansas would adopt the Restatement (Third) of Unfair Competition for this tort,[32] which provides the following guidance:

> One who causes harm to the commercial relations of another by engaging in a business or trade is not subject to liability to the other for such harm unless:
>
> (a) the harm results from acts or practices of the actor actionable by the other under the rules of this Restatement relating to:
> (1) deceptive marketing, as specified in Chapter Two;
> (2) infringement of trademarks and other indicia of identification, as specified in Chapter Three;
> (3) appropriation of intangible trade values including trade secrets and the right of publicity, as specified in Chapter Four;
>
> or from other acts or practices of the actor determined to be actionable as an unfair method of competition, taking into account the nature of the conduct and its likely effect on both the person seeking relief and the public . . . .[33]

Kansas views this common law claim broadly:

---

[29] *See id.* § 60-5320(c)(5)(A)(i) & (B) (defining "[e]xercise of the right to petition" as "[a] communication in or pertaining to: (i) [a] judicial proceeding" and "a communication in connection with an issue under consideration or review by a . . . judicial . . . proceeding.").

[30] *Id.* § 60-5320(d).

[31] *See BHCMC, LLC v. Pom of Kan., LLC*, No. 20-2609-DDC-ADM, 2021 WL 1909639, at *9 (D. Kan. May 12, 2021).

[32] *Assessment Techs. Inst., LLC v. Parkes*, 588 F. Supp. 3d 1178, 1222 (D. Kan. 2022); *BHCMC, LLC*, 2021 WL 1909639, at *9; *Airport Sys. Int'l, Inc. v. Airsys ATM, Inc.*, 144 F. Supp. 2d 1268, 1271 (D. Kan. 2001).

[33] Restatement (Third) of Unfair Competition § 1 (1995).

> Unfair competition . . . does not describe a single course of
> conduct or a tort with a specific number of elements; it instead
> describes a general category into which a number of new torts may
> be placed when recognized by the courts.  The category is open-
> ended, and nameless forms of unfair competition may be
> recognized at any time for the protection of commercial values.[34]

The Court may consider the parties' pleadings and supporting and opposing affidavits in determining whether Tank has established a likelihood of prevailing on its unfair competition claim.[35]  Tank's pleading alleges that "CST's conduct, including this lawsuit, interfered with and continues to interfere with Tank Connection's ability to conduct its business."[36]  Tank alleges that CST's claims in this case, and its attempt to obtain a preliminary injunction, are baseless. Tank also submits testimony from the preliminary injunction hearing to support its contention that CST did not have a reasonable expectancy in a subcontract with Crowder, and that it lacked a factual basis to allege that Tank misappropriated trade secrets.

CST submits affidavits from CST's CEO, Jeff Mueller, and its attorney, Ben McMillen. Mueller attests that there is no "market" for triangulated, rectangular, column-supported aluminum flat cover roofs.  Instead, "this is a specific design and build for which CST has a propriety and confidential method of executing."[37]  He acknowledges that the broader, multi-billion-dollar industry of manufacturers of aluminum domes and covers includes "several dozen participants."[38]

---

[34] *AgJunction LLC v. Agrian Inc.*, No. 14-CV-2069-DDC-KGS, 2014 WL 2557704, at *7 (D. Kan. June 6, 2014) (alteration in original) (quoting *Airport Sys. Int'l, Inc.*, 144 F. Supp. 2d at 1271); *see also BHCMC, LLC*, 2021 WL 1909639, at *9.

[35] K.S.A. § 60-5320(d).

[36] Doc. 88, Counterclaim ¶ 67.

[37] Doc. 136-1 ¶ 5.

[38] *Id.* ¶ 2.

CST correctly argues that none of the federal cases involving unfair competition claims under Kansas law have been based on a party's decision to file a lawsuit.[39]  Tank responds that the Restatement is broad and captures the anticompetitive conduct it alleges in its counterclaim. While Tank correctly points out that the residual clause of the Restatement captures "other acts or practices of the actor determined to be actionable as an unfair method of competition, taking into account the nature of the conduct and its likely effect on both the person seeking relief and the public,"[40] it is not without boundaries.  The following comment to the Restatement provides further guidance about application of the residual clause:

> It is impossible to state a definitive test for determining which methods of competition will be deemed unfair in addition to those included in the categories of conduct described in the preceding Comments.  Courts continue to evaluate competitive practices against generalized standards of fairness and social utility.  Judicial formulations have broadly appealed to principles of honesty and fair dealing, rules of fair play and good conscience, and the morality of the marketplace.  The case law, however, is far more circumscribed than such rhetoric might indicate, and courts have generally been reluctant to interfere in the competitive process.  An act or practice is likely to be judged unfair only if it substantially interferes with the ability of others to compete on the merits of their products or otherwise conflicts with accepted principles of public policy recognized by statute or common law.
>
> As a general matter, if the means of competition are otherwise tortious with respect to the injured party, they will also ordinarily constitute an unfair method of competition.  A competitor who interferes with the business of another by acts or threats of violence directed at the other, for example, is subject to liability for unfair competition.  *So also is one who interferes by instituting or threatening to institute groundless litigation against a competitor.*[41]

---

[39] *See, e.g.*, *Assessment Techs. Inst., LLC v. Parkes*, 588 F. Supp. 3d 1178, 1222 (D. Kan. 2022) (copyright infringement and trade secrets); *BHCMC, LLC*, 2021 WL 1909639, at *9 (tortious interference with business expectancy); *Airport Sys. Int'l, Inc.*, 144 F. Supp. 2d at 1271 (trade secrets).

[40] Restatement (Third) of Unfair Competition § 1(a) (1995).

[41] *Id.*, cmt. g (emphasis added).

Thus, similar to the Sherman Act claim, Tank must demonstrate that CST instituted groundless litigation against it in an effort to stifle competition.  The Court determines that Tank fails to present substantial competent evidence that CST's litigation is groundless.  As stated in the Court's Order ruling on Tank's partial motion to dismiss in this case, CST fails to state a plausible claim for relief as to its trade secrets and aiding and abetting claims.  And the Court has found that CST is unlikely to succeed on the merits of its tortious interference with business expectancy and unfair competition claims as part of its ruling on the preliminary injunction motion.  But these findings do not equate to a finding that CST's claims are "groundless."  As the Court's Order ruling on the preliminary injunction motion makes clear, the issue of a bond requirement was a fact-intensive inquiry.[42]  CST took the unsuccessful, yet reasonable, position that a letter of intent issued to it from Crowder established a business expectancy.  Thus, the Court did not find that the claims at issue at the preliminary injunction stage were groundless.

And the mere fact that CST has litigated other, similar claims is not evidence that its claims in this case are groundless.  As McMillen's affidavit establishes, these were not groundless lawsuits.[43]  In three of these lawsuits, CST obtained temporary restraining orders.[44]  Moreover, the timing of CST's motion for preliminary injunction, filed after the manufacturing process was well underway, standing alone, is not substantial evidence that CST's litigation in this case is groundless.  Therefore, the Court grants CST's motion to strike the unfair competition counterclaim under the KPSPA.

---

[42] *See* Doc. 181.

[43] *See* Doc. 136-2 ¶¶ 3–9.

[44] *Id.* ¶¶ 3, 7, 8.

**B.      Motion to Dismiss**

CST alternatively moves to dismiss both counterclaims under the *Noerr-Pennington* doctrine, a First-Amendment based immunity developed by the Supreme Court in a line of antitrust cases.[45]  The Court need only consider whether the Sherman Act claim is subject to this defense since the Court granted CST's motion to strike the unfair competition counterclaim. "[T]he *Noerr-Pennington* doctrine 'exempts from antitrust liability any legitimate use of the political process by private individuals, even if their intent is to eliminate competition.'"[46]  Under this doctrine, immunity under the Sherman Act has been "extended to situations where groups 'use . . . *courts* to advocate their causes and points of view respecting resolution of their business and economic interests *vis-á-vis* their competitors.'"[47]  However, "while genuine petitioning is immune from antitrust liability, sham petitioning is not."[48]

The Supreme Court has adopted a two-part test for the sham petition exception to immunity: (1) "it 'must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits'"; and (2) "the litigant's subjective motivation must 'concea[l] an attempt to interfere *directly* with the business relationships of a competitor . . . through the use [of] the governmental process—as opposed to the *outcome* of that process—as an anticompetitive weapon.'"[49]

---

[45] *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965); *E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *see also Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–61 (1993).

[46] *Van Sant & Co. v. Town of Calhan*, 83 F.4th 1254 (10th Cir. 2023) (quoting *Tal v. Hogan*, 453 F.3d 1244, 1259 (10th Cir. 2006)), *cert. denied*, 144 S. Ct. 1060 (2024).

[47] *BE & K Constr. Co. v. N.L.R.B.*, 536 U.S. 516, 525 (2002) (alteration in original) (quoting *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 511 (1972)).

[48] *Id.* at 525–26.

[49] *Id.* (alteration in original) (quoting *Pro. Real Est. Invs., Inc.*, 508 U.S. at 60–61).

Tank fails to address *Noerr-Pennington* immunity.  Nonetheless, the Court will consider its arguments that it has stated a plausible "antitrust claim under the Sherman Act for the use of sham litigation to deter competition."[50]  Tank claims that the following facts alleged in its Counterclaim support the sham petition exception: CST has a history of acquiring competitors to consolidate its market share, using litigation to hobble competitors or potential competitors, and colluding with other tank suppliers to share the market and fix prices; CST has never identified any trade secrets that were allegedly misappropriated; CST has already acquired two competitors and caused Tank "the loss of market share, market position, market capitalization, commercial opportunities, favorable commercial terms and competitive advantage;" and CST seeks to stop a competitively-bid project because its competitor won it after CST was unable to provide bonding.

The Court finds that these facts do not rise to the level required to demonstrate the CST's claims in this case are "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits."[51]  Moreover, the Court finds that these facts do not demonstrate that CST's motivation is to use this lawsuit, rather than its outcome, as an anticompetitive weapon.  Although the Court has dismissed two of CST's claims, it declined to dismiss the others.  And Tank did not move to dismiss CST's Count VI.  Nothing in the Court's Order dismissing CST's claims for misappropriation of trade secrets and aiding and abetting support the contention that they were objectively baseless claims.  The trade secrets claims

---

[50] Doc. 155 at 9.

[51] *BE & K Constr. Co.*, 536 U.S. at 525.

simply lacked the factual matter necessary to nudge the claim over the line to plausible.[52]  The

aiding and abetting claim was dismissed on a legal matter over which the courts are split.

 Finally, while the Court denied CST preliminary injunctive relief, that ruling does not

indicate that the lawsuit itself or the motion were objectively or subjectively baseless.  CST

expended time and resources to brief and present evidence at a two-day hearing in an effort to

obtain interim injunctive relief until the case could be heard on the merits.  While the Court

found that CST was unable to meet its burden of demonstrating preliminary injunctive relief was

warranted, it did not find that the lawsuit was baseless.  And CST's engagement in the litigation

process demonstrates that it intended to obtain relief through the outcome of the process, not the

act of filing its motion and this lawsuit.  Accordingly, the Court finds that Tank's Sherman Act

counterclaim does not meet the sham exception to the *Noerr-Pennington* doctrine.  CST's motion

to dismiss the Sherman Act claim is therefore granted.

 **IT IS THEREFORE ORDERED BY THE COURT** that CST's Motion to Strike

and/or Dismiss Defendant Tank Connection, LLC's Counterclaims (Doc. 135) is **granted**.  The

Court grants CST's motion to strike the unfair competition claim and its motion to dismiss the

Sherman Act claim.

 **IT IS SO ORDERED.**


 Dated: July 9, 2024

         S/ Julie A. Robinson
         JULIE A. ROBINSON
         UNITED STATES DISTRICT JUDGE

---

[52] In fact, the Court found that CST sufficiently identified trade secrets in its Amended Complaint; however, it failed to allege that Tank misappropriated the identified trade secrets.