# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

CST INDUSTRIES, INC.,

     Plaintiff,

     v.                                                    Case No. 23-2339-JAR-RES

TANK CONNECTION, LLC, et al.,

     Defendants.

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants Tank Connection, LLC ("Tank") and Jordan LaForge's ("Mr. LaForge") Response to the Court's Show-Cause Order. ECF No. 378. The Court previously ordered Tank[1] to show cause why it should not be sanctioned for violating the terms of the Amended Protective Order. ECF No. 374. The Court also granted leave for Plaintiff CST Industries, Inc. ("CST") to file a brief setting forth its position as to what sanctions, if any, are warranted and further granted leave for Plaintiff to request limited discovery if it believed additional discovery was necessary. If Plaintiff filed a brief, Defendants were granted leave to file a reply brief. Both sides elected to file further briefs. *See* ECF Nos. 384, 386.

---

[1]    The Court issued the Show-Cause Order to Defendant Tank following the discovery conference held at Plaintiff's request pursuant to Plaintiff's September 11, 2024 email to the Court. Plaintiff characterized the discovery dispute as involving "Tank Connection, LLC's ('Tank') violations of the Amended Protective Order ('PO') entered by the Court on March 7, 2024. ECF No. 142." (email not filed as part of the record). Counsel for Tank also represent Mr. LaForge and counsel filed a single response to the Show-Cause Order on behalf of both Defendants. ECF No. 378 at 1 (titled as "Defendants Tank Connection, LLC and Jordan LaForge's Response to Show Cause Order"). Because these Defendants jointly responded to the Show-Cause order, this Order uses the same terminology, addressing these two "Defendants" collectively.

Defendants argue that sanctions are unwarranted. *See* ECF No. 378. In contrast, Plaintiff seeks: (1) discovery regarding the scope of the violations of the Amended Protective Order; (2) fourteen days to request a discovery conference with the Court to seek leave to file additional discovery-related motions related to this issue, if warranted; and (3) $96,967.33 in attorneys' fees. *See* ECF No. 384 at 1.

For the reasons explained below, the Court rejects both sides' positions and instead finds that a public admonishment of defense counsel is the appropriate sanction for the violations of the Amended Protective Order.

## I.      BACKGROUND

The District Judge previously summarized this case, which "involves two business rivals seeking to become the roof subcontractor for a large municipal project to construct a drinking water reservoir for the City of Richmond, Virginia." *CST Indus., Inc. v. Tank Connection, L.L.C.*, No. 23-2339-JAR-RES, 2024 WL 3360421, at *1 (D. Kan. July 9, 2024). Plaintiff asserts claims against: its competitor, Tank; Tank's liquid market manager, Jordon LaForge; and Crowder Construction, Inc., which acted as the general contractor for the project. *Id.*

This litigation has a long and contentious procedural history. Throughout this litigation, the parties have requested and received multiple discovery conferences with the undersigned addressing extensive discovery disputes. *See* ECF Nos. 208, 239, 274, 373. As the Court observed in an order following the July 17, 2024 discovery conference, "many—if not all—of these conferences could have been avoided if the parties followed the caselaw in this District or truly exhausted their good faith meet-and-confer obligations." ECF No. 276 at 4. Plaintiff and Defendants Tank and Mr. LaForge bore responsibility for many of these ongoing discovery

disputes.  This fraught history, which is included because it is ultimately relevant to the Court's legal analysis, is summarized below.

### A.      The Protective Order and the Amended Protective Order

The Court entered a Protective Order on October 19, 2023, at the parties' request.  ECF No. 26 at 1.  The parties contended a protective order was necessary because "the parties design, manufacture, and sell storage tanks, silos, domes, covers, and related products used in a variety of industrial and commercial processes in competition with each other."  *Id.* at 1.

Again, at the parties' request, the Court entered an Amended Protective Order on March 7, 2024, which allowed the parties to designate certain categories of information as "Highly Confidential – Attorney's Eyes" ("AEO").  *See* ECF Nos. 141, 142 at 2-3.  The Amended Protective Order specifies to whom a party may disclose AEO-designated material.  ECF No. 142 at 5-6.  As relevant to this dispute, the Amended Protective Order states that AEO-designated material "may only be disclosed" to a limited set of individuals, including: "Outside Counsel of record for the parties and their employees and agents;" and "[a]ny expert witness, outside consultant, or investigator retained specifically in connection with this litigation, but only after such persons have completed the certification contained in Attachment A, Acknowledgment and Agreement to be Bound . . . ."  *Id.*

### B.      Earlier Discovery Disputes

On June 11, 2024, Plaintiff emailed the Magistrate Judge's chambers to request an emergency discovery conference to preclude Tank's corporate representative, Casey Whalen, from attending the deposition of Steven Ducotey because Plaintiff was scheduled to depose Mr. Whalen the following day.  *See* ECF No. 237.  The Court denied the request for multiple reasons, including that it was legally unsupported and inconsistent with the District's Deposition Guidelines.  *See*

ECF No. 240. Specifically, during the discovery conference, the Court asked Plaintiff to identify the federal rule or caselaw that supported its request to exclude Mr. Whalen from the deposition, but Plaintiff "did not cite to any federal rule, did not request a protective order pursuant to Rule 26(c), and did not cite to any other legal authority in support of this request." *Id.* at 2. Moreover, Plaintiff's position was not supported by any language in the Amended Protective Order. *Id.* The Court explained that "[w]hile an issue arising during a deposition may cut short an otherwise exhaustive legal analysis of an issue, a party requesting a discovery conference still must have an articulable legal basis for any relief sought, regardless of the exigent circumstances." *Id.*

Despite the Court largely adopting the language proposed by the parties for the Amended Protective Order, the present dispute is not the first involving the Amended Protective Order. The Court convened another discovery conference at the request of Defendant Tank on July 10, 2024. *See generally* ECF No. 276 (Order following discovery conference). Tank contended that Plaintiff had over-designated certain documents. *Id.* at 2. After conducting an in-camera review of documents selected by each side, the Court found that Plaintiff's designations were appropriate. *See id.* at 2-3. The Court noted during the discovery conference that the parties had agreed to a broad definition of AEO material and now had to live with the consequence of their stipulated definition.

### C.    Tank's Disclosure of AEO-Designated Expert Reports

On July 29, 2024, Plaintiff's counsel emailed its expert disclosures and reports to defense counsel. ECF No. 378 at 1. Specifically, the email included: (1) Peter McKeighan's report, which concerns the engineering of the Byrd Park project at issue in this case (the "engineering expert report"); (2) Brent Bersin's report, which concerns Plaintiff CST's damages (the "financial expert report"); and (3) the expert disclosure of Daniel Marucci (the "Marucci expert disclosure"). *Id.*

The engineering expert report spans 43 pages and is designated as "HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY" at the bottom of pages 6-30.  ECF No. 378-5 at 1, ¶ 5.  The financial expert report spans 111 pages and contains AEO designation on the top of pages 6-86 and 96-111. *Id.*  No party has alleged a violation of the Amended Protective Order related to any dissemination of the Marucci expert disclosure.

On July 30, 2024, counsel for Defendants Tank and Mr. LaForge disclosed AEO-designated materials three separate times.  *First,* Mitchell E. Wood, one of the attorneys of record for Defendants, sent the engineering expert report, the financial expert report, and the Marucci expert disclosure to Tank employees Dennis Banning, Kenton Jarman, Jeremy Burke, and Jordan LaForge.  ECF No. 378-6 at 1.[2]  *Second,* a paralegal at defense counsel's firm copied the same Tank employees, Mr. Banning, Mr. Burke, Mr. LaForge, and Mr. Jarman, on an email with attachments that included the Marucci expert disclosure and the engineering expert report.  ECF No. 378-1 at 1, ¶ 9; ECF No. 378-2 at 1, ¶ 9; ECF No. 378-3 at 1, ¶ 8; and ECF No. 378-4 at 1, ¶ 8.  *Third,* Kathryn Wright, another attorney of record for Defendants, approved the transmission of the engineering expert report and the Marucci expert disclosure via email to Tank employee Steven Ducotey, whom Defendants intended to name as a non-retained expert in this case.  ECF No. 378-5 at 1, ¶ 6.

### D.     Investigation into AEO-Disclosures

On August 6, 2024, Plaintiff took the continued deposition of Mr. Ducotey, whom Tank had designated as its corporate representative.  ECF No. 384 at 2.  During this deposition, Mr.

---

[2]     Mr. Wood's affidavit explains that he did not read the expert reports in detail prior to sending them given the length of the reports.  ECF No. 378-6 at 1, ¶ 6.  The affidavit further states that had he seen the AEO designation, he would not have sent the reports.  *Id.*

Ducotey testified that he had received the engineering expert report from counsel, reviewed the report, and that no one else at Tank had reviewed the report. *Id.*

Two days later, on August 8, 2024, Plaintiff's counsel emailed defense counsel to request clarification regarding the disclosure of the engineering expert report to Mr. Ducotey. ECF No. 383-2 at 4-5. On August 9, 2024, Ms. Wright responded and stated in part: "Tank Connection is designating Steve Ducotey as an expert." *Id.* at 4.

That same day, Plaintiff's counsel responded via email in relevant part:

> As you know, the Amended Protective Order only allows experts "retained specifically in connection with this litigation" (i.e. retained experts) to view AEO material. This language is precisely included to prevent what Tank Connection is trying to do here, which is to designate an employee as an expert in order to show him/her AEO materials.

*Id.* The email further stated that Plaintiff intended "to move for sanctions" and requested that defense counsel "please advise immediately what additional AEO materials have been disclosed to Mr. Ducotey (or any other employee of Tank Connection)[.]" *Id.*

Ms. Wright responded to the email that same day. *Id.* at 3. She reiterated her disagreement with Plaintiff's interpretation of the Amended Protective Order without elaboration. *Id.* She further stated that "[n]o additional AEO materials have been disclosed to Mr. Ducotey or any other employee of Tank Connection." *Id.*

This representation about whether there were other AEO disclosures to Tank, however, was incorrect at the time it was made. As confirmed in the affidavit submitted by Mr. Wood, that same day, August 9, 2024, Mr. Wood realized his "incorrect disclosure" of the engineering expert report and the financial expert report to multiple Tank employees. ECF No. 378-6 at 1, ¶ 8. That day, he "instructed my clients to delete and disregard the expert reports sent on July 30, 2024." *Id.* Counsel's affidavits do not explain why Ms. Wright represented to Plaintiff that no additional AEO

materials had been disclosed on the same day that Mr. Wood instructed four other Tank employees to delete AEO materials.   Additionally, there is no explanation for why counsel did not immediately notify Plaintiff of these additional disclosures.

On August 13, 2024, the parties met and conferred via videoconference.  ECF No. 378-6 at 1, ¶ 9.  During that conference, Mr. Wood admitted to Plaintiff that both the engineering and financial reports had been disclosed to other unidentified Tank employees besides Mr. Ducotey. ECF No. 384 at 3.  Plaintiff requested that "both Tank and Crowder's counsel provide in writing all AEO materials that have been shared with unauthorized person(s), the identity of the person(s) that these documents were shared with, and the date these materials were shared." *Id.* at 3-4.

On August 14, 2024, Defendants sent a letter to Plaintiff conceding that their interpretation of the Amended Protective Order was incorrect.  ECF No. 383-5 at 3.  The letter also claimed that Mr. Ducotey had deleted any copies of the engineering report, had not shared or disclosed any information contained in the report with any Tank employees or anyone else, and that counsel's misreading of the Amended Protective Order was not at the request of Tank.  *Id.* at 3-4.

But this statement was inaccurate at the time it was made.  Mr. Ducotey's declaration states that he "generally discussed the Engineering Expert Report via Gmail Chat on July 30, 2024, with Tank employees Tim Hopper and Joel Wicoff."  ECF No. 379-1 at 1, ¶ 11.  He also discussed the engineering expert report with another Tank employee that same day via Gmail Chat, and he mentioned an aspect of the engineering expert report to a former colleague on a phone call in late July or early August.  *Id.* at ¶¶ 12-13.  Mr. Ducotey also drafted notes about the engineering expert report, which he shared with Tank's counsel.  *Id.* at ¶ 9.

The August 14 letter also identified Mr. Wood's disclosure of the engineering and financial reports with the four other Tank employees, stating that "[u]pon realization of this incorrect

disclosure on August 9, 2024, my office confirmed that these four individuals have deleted the Engineering Report and Financial Report that was shared and have not retained the information in any manner." ECF No. 383-5 at 4.

But this statement was also inaccurate. Tank's IT manager's audit logs, submitted in camera as an Excel spreadsheet emailed to the Court on September 25, 2024, indicate that many of these emails were deleted after August 9, 2024, and all emails remained accessible on August 9, 2024. ECF No. 386 at 3-4 (identifying dates for email deletion by various individuals with access). Specifically, the audit logs state:

> that Mr. Banning moved the email with the Reports to trash on August 9, 2024, Mr. Jarman moved the same email to trash on August 12, 2024, Mr. LaForge moved the same email to trash on August 13, 2024 and Mr. Burke moved the same email to trash on August 19, 2024. *See* Ex. F-1. The emails were then permanently deleted on: August 19 for Mr. Banning, September 11, 2024 for Mr. Jarman, September 12, 2024 for Mr. LaForge and September 19, 2024 for Mr. Burke.

*Id.* From the audit log, it appears that all emails remained retrievable until they were permanently deleted.

Plaintiff followed up by letter on August 16, 2024, advising Defendants that "[a]bsent Tank's agreement to the remedial measure set forth" in the letter, it intended to seek: (1) expedited discovery; (2) an evidentiary hearing on its motion for sanctions and contempt of Court; (3) a protective order precluding Plaintiff's "production of any further confidential materials until resolution of the evidentiary hearing"; (4) an order requiring Tank to retain "Confidentiality Counsel," which is described as "independent counsel responsible for ensuring compliance with the PO by Tank"; and (5) attorneys' fees and costs incurred "in connection with Tank's violations." ECF No. 383-6 at 5. In footnotes, Plaintiff cited five cases that purport to support these remedies. *Id.* at 5 nn.1-4.

Defendants responded via email on August 19, 2024, noting that "discovery is ongoing so we believe you are free to depose who you believe is necessary." ECF No. 383-7 at 2.[3] Nevertheless, Defendants stated that they would oppose: any discovery into attorney-client privileged information; "an evidentiary hearing to the extent you wish to do so prior to the required conference with the Court"; and the remainder of the relief requested. *Id.* Defense counsel further stated, "[p]lease let me know if you would like to set a time to discuss this further." *Id.* Even though Defendants appeared open to depositions to the extent they did not encompass attorney-client privileged information, Plaintiff did not notice any depositions, and Plaintiff does not appear to have had any further discussions with Defendants regarding the request to take expedited discovery.

### E.    Disclosure of the Expert Reports by Defendant Crowder

On August 13, 2024, while Plaintiff was meeting and conferring with Defendants Tank and Mr. LaForge about sharing expert reports in violation of the Amended Protective Order, counsel for Defendant Crowder Construction Company notified Plaintiff that Crowder's counsel also had shared the expert reports and another provisionally designated AEO document with its CEO. ECF No. 384 at 4, n.2. Plaintiff states that it does not seek sanctions or limited discovery as to Crowder because Crowder voluntarily disclosed its violations and "admitted fault without resorting to any

---

[3]    On June 24, 2024, the Court entered the Second Amended Scheduling Order. ECF No. 249. As part of that Order, the Court extended "the discovery deadline from August 23, 2024, to September 23, 2024, but all discovery must still be served in time to be completed by August 23, 2024." *Id.* at 4. The Court also stated that "the additional month of discovery is for the parties to complete all outstanding discovery that was served or commenced in time to be completed by the August 23, 2024 deadline but has been delayed because of ongoing disputes and/or scheduling issues with respect to the outstanding depositions." *Id.* Nothing prevented the parties from stipulating to additional discovery.

misrepresentations or justifications regarding [its] violations, and the violation did not involve disclosure to a competitor (*i.e.*, Tank Connection)." *Id.*

**F.     Plaintiff's Request for a Discovery Conference**

More than three weeks later, on September 11, 2024, Plaintiff's counsel emailed the Magistrate Judge's chambers to request a pre-motion discovery conference concerning "Tank Connection, LLC's ('Tank') violations of the Amended Protective Order" and Plaintiff's intent to file multiple disputed discovery-related motions.  Specifically, the email relied on cases previously cited in its August 16, 2024 letter and stated that Plaintiff intended to seek:

> **(1)     Expedited Discovery:** In order to understand the scope of the violations, CST intends to move for discovery of communications related to breach of the PO to understand the scope of the violations.  *Loc. Access, LLC v. Peerless Network, Inc.,* 2019 WL 5196879, at *17 (M.D. Fla. June 21, 2019)*, report and recommendation adopted,* 2020 WL 9454923 (M.D. Fla. June 29, 2020) (Motions alleged Defendant and its attorneys improperly disclosed and used documents Plaintiff had designated as "Confidential" and "Highly Confidential," in violation of the Protective Order. The Court allowed discovery on these issues and stayed all unrelated litigation).

> **(2)     Evidentiary Hearing:** CST intends to move for an evidentiary hearing on its motion for sanctions.

> **(3)     Protective Order:** CST intends to move for a protective order precluding CST's production of any further confidential materials until resolution of the evidentiary hearing. *IPVX Pat. Holdings, Inc. v. 8X8, Inc.,* 2013 WL 6000590, at *1 (N.D. Cal. Nov. 12, 2013) (a limited stay of discovery is appropriate to prevent Plaintiff's counsel from obtaining technical and financial information about Defendant before a determination is made as to whether Plaintiff's counsel may continue to represent Plaintiff in this action.

> **(4)     Retention of Confidentiality Counsel:** CST intends to move for an order requiring Tank to retain independent

counsel responsible for ensuring compliance with the PO by Tank.

(5)    **Attorneys' Fees:** CST intends to move for its attorneys' fees and costs incurred in connection with Tank's violations. *Kaufman v. Am. Fam. Mut. Ins. Co.*, 601 F.3d 1088, 1091 (10th Cir. 2010) (The court ordered counsel to pay the legal fees and costs incurred by Defendant in preparing its motion for sanctions). *See also Greiner v. City of Champlin*, 152 F.3d 787 (8th Cir. 1998) (Eight Circuit upheld the sanction of "attorney's fees" which was imposed by the district court for willful disobedience of a court order).

The email further stated that "Tank responded via email to CST's August 16, 2024 letter confirming it opposed the relief request[ed]." With the benefit of the entire record before the Court, the Court notes this statement was not entirely accurate. The August 19, 2024 email discussed above specifically stated that "discovery is ongoing so we believe you are free to depose who you believe is necessary." ECF No. 383-7 at 2.

Plaintiff does not explain why it waited weeks to seek a discovery conference, particularly given the broad relief it intended to seek, including a protective order temporarily precluding production of confidential materials and an order requiring appointment of "confidentiality counsel." The delay is particularly problematic because discovery was set to close less than two weeks later, on September 23, 2024, and the proposed pretrial order was due on September 30, 2024. ECF No. 249.

G.    **The September 17, 2024 Discovery Conference**

The Court convened the discovery conference on September 17, 2024. ECF No. 373. During the discovery conference, counsel for Defendants Tank and Mr. LaForge confirmed that counsel had disclosed AEO-designated material to Tank employees in violation of the terms of the Amended Protective Order. ECF No. 374 at 1. Because of this, the Magistrate Judge ordered

11

Defendant Tank Connection to show cause why it should not be sanctioned and explained that the response must address:

> (1) all efforts to investigate the violations; (2) all efforts to address these violations, including all efforts to ensure that all inappropriately shared documents were destroyed and not used, either in this litigation or elsewhere; and (3) steps to ensure there were no other violations of the protective order. Defendant Tank Connection must submit a declaration or affidavit detailing these efforts so that the record is clear that this information is provided under penalty of perjury. The Court also encourages Defendant Tank Connection to attach exhibits to the declaration supporting these efforts, including metadata that can confirm destruction or confirm that no additional sharing occurred.

*Id.* at 2-3.

The Court also gave Plaintiff an opportunity to file a brief setting forth its position as to what sanctions, if any, are warranted." ECF No. 374 at 2. As stated on the record, the Court explained that it was issuing a show-cause order because it takes seriously the violations of the Amended Protective Order. The Court noted, however, that it had concerns about the proportionality of Plaintiff's response to the admitted violations. Among other things, and as discussed at the discovery conference, the cases cited by Plaintiff in the email requesting a discovery conference did not support all of the extensive relief Plaintiff intended to request— including the requirement that Defendant Tank retain confidentiality counsel. If Plaintiff elected to file a brief, Defendant Tank was granted leave to file a reply brief to address Plaintiff's positions, and the Court again encouraged Tank to support facts with a declaration or affidavit. *Id.* at 2.

To provide the parties with one final opportunity to reach agreements to address these issues, the Court directed them again to meet and confer on or before September 20, 2024. *Id.* As stated in the Show-Cause Order, "[t]his could include the exchange of information that may address Plaintiff's concerns about the disclosures, and the Court strongly encourages Plaintiff to

email Defendant Tank Connection *in advance of the videoconference* to specify what, if any, information it requests." *Id.* (emphasis added).  The Court further directed the parties to discuss the reasonable time Plaintiff has spent addressing the violations of the Amended Protective Order if Plaintiff planned to seek attorneys' fees.  *Id.* at 3.

### H.    Discussions Following the Discovery Conference

According to the email exchange attached as an exhibit to Plaintiff's response to the Show-Cause Order, it does not appear that Plaintiff emailed Defendants in advance of the conference to specify what information it requested.  *See* ECF No. 378-7 (email exchange among counsel).  The parties met and conferred on September 19, 2024, and defense counsel followed up via email that same day.  *Id.* at 3.  The email states:

> I have it noted that you are requesting the following:
>
> -    Communications between Tank Connection employees about the disclosure;
> -    Attorney client privileged communications between my office and Tank Connection about the disclosure;
> -    Internal communications from my office about this disclosure;
> -    Any other information that would help CST understand the scope of the disclosure and how, if any, these reports have been used by Tank Connection employees;
> -    Fees and costs to date (unknown exact at this time).

*Id.* at 3-4.  The email goes on to explain that Defendants would be willing to provide: (1) affidavits from the Tank employees who received the AEO documents concerning when the information was received, with whom it was shared, how—if at all—it was used, and when it was deleted; (2) an affidavit from the IT manager discussing steps taken to ensure the reports were not available and were not used by Tank; (3) affidavits from counsel discussing their roles in the disclosure and the steps the law firm has taken to ensure the security of AEO information; and (4) nonprivileged communications between Tank employees about the reports.  *Id.* at 4.  The email additionally states

13

that it would be "very helpful" if Plaintiff provided an exact accounting of the fees and costs that Plaintiff is claiming and asks, "[c]ould you provide?" *Id.* In closing, defense counsel states "[p]lease let me know your thoughts on the above – I am happy to meet again as well." *Id.*

Having received no response from Plaintiff's counsel, defense counsel sent a follow-up email on September 23, 2024. *Id.* at 2-3. Later that day, Plaintiff's counsel responded to state that Plaintiff was working on compiling time spent on the matter during September and hoped to provide it to Defendants the following day. *Id.* at 2. The email further explained, "[a]s for the requested discovery, affidavits and internal communications of Tank employees are insufficient for CST to determine the circumstances underlying Tank Connection's violations of the Protective Order, the impact of the violations, and the potential existence of any further violations. *Id.* at 2.

The following day, on September 24, 2024, defense counsel responded. *Id.* at 1. The response addresses the parties' disagreement regarding the information Plaintiff stated it required, and states that counsel "would very much appreciate it if you could share the hours worked on this matter or the total attorneys' fees for this matter so that it can be addressed in our response to the show-cause order." *Id.*

## I.     Responses to the Show-Cause Order

On September 25, 2024, Defendants Tank and Mr. LaForge, who share the same attorneys, responded collectively to the Show Cause Order. ECF No. 378. Among others, Defendants have attached as exhibits affidavits from Mr. Wood and Ms. Wright, the Tank employees to whom defense counsel disclosed AEO-designated material, and the director of IT and marketing. ECF Nos. 378-79.

Defendants argue that they have taken steps to ensure that the AEO material has not been and will not be used by Tank, thus making further sanctions unwarranted. *See* ECF No. 378 at 6-

7. Alternatively, if the Court awards attorneys' fees, Defendants cite several cases approving awards under $20,000 and argue that any award should be consistent with these cases. *Id.* at 8-9.

Plaintiff also elected to file a brief, ECF No. 383, which failed to comply with the requirements outlined in the Show-Cause Order, limiting the brief to 10 double-spaced pages.[4] Plaintiff seeks: limited discovery on the scope and impact of the violations; an award of $96,967.33 in attorneys' fees; and, upon completion of the limited discovery, fourteen (14) days to request a discovery conference with the Court to seek leave to file additional discovery-related motions related to this issue, ***if warranted.***" ECF No. 384 at 1 (emphasis in original).

Because Plaintiff elected to file a brief, Defendants filed a reply brief addressing Plaintiff's request for additional discovery and attorneys' fees. ECF No. 386. Defendants' reply brief argues that additional discovery is unwarranted because information provided by Defendants, including the audit logs, show the AEO-designated materials have been deleted. *See id.* The reply also clarifies whether counsel was copied on both of the June 30, 2024 emails to Tank employees

---

[4] On October 2, 2024, Plaintiff timely filed its brief, ECF No. 383, but the Show-Cause Order limited the brief to "10 double-spaced pages." ECF No. 374 at 2. The substance of the brief begins on the first page and extends into the twelfth page. *See generally* ECF No. 383. It contains large portions that are single-spaced, not double-spaced, as required. *See id.* at 4 (single-spaced footnote appearing in a font smaller than 12-point font), 6 (single-spaced list spanning more than half of the page), and 7 (more single-space lists).

Apparently realizing that the brief violated the Court's page limitation, Plaintiff filed an amended brief on October 3, 2024. ECF No. 384. Plaintiff's Notice of Errata, filed the same day, explains that because of "an administrative error in connection with formatting the brief for filing, the wrong version of the brief was filed." ECF No. 385. It does not appear that the amended brief was substantively changed to fit within the page limits. Instead, while the amended brief spans 10 pages, it contains large sections of single-spaced verbiage and nonstandard margins and spacing. *See generally* ECF No. 384. Plaintiff did not seek leave of the Court to file this untimely amended brief. If it had, the Court would have denied that motion because the amended brief fails to comply with the limitations imposed in the Show-Cause Order.

(counsel was) and restates the specific Tank systems that Defendants searched to ensure compliance with the Amended Protective Order. *See id.*

### J. Final Pretrial Conference

The Court convened a final pretrial conference on October 16, 2024. ECF No. 391. In advance of the conference, on September 30, 2024, the parties had submitted a proposed Pretrial Order. Under the section titled "Additional Pretrial Motions," Plaintiff listed a "Motion for Sanctions for Breach of the Amended Protective Order." During the final pretrial conference, the Court inquired as to why Plaintiff intended to file an additional motion for sanctions considering that the Court already was addressing the issue via its Show-Cause Order. Plaintiff's counsel explained that if Plaintiff prevailed on its request for additional discovery, then it was preserving its right to seek further sanctions for other, then-unknown violations of the Amended Protective Order that might be revealed by that discovery.

## II. DISCUSSION

In light of this factual and procedural background, the Court must address three issues. *First*, did defense counsel violate the Amended Protective Order? *Second,* if so, what sanctions, if any, are appropriate? This analysis includes whether any reasonable expenses should be awarded or if there are other circumstances that make an award of expenses unjust. *Third,* should the Court order any additional actions, including the discovery requested by Plaintiff? Each issue is discussed below.

### A. DEFENSE COUNSEL VIOLATED THE AMENDED PROTECTIVE ORDER

The two attorneys of record who were responsible for the disclosure of AEO-designated documents have admitted to violating the Amended Protective Order. *See* ECF No. 378 at 1. Counsel's respective affidavits explain that the disclosures were unintentional—that one attorney

forwarded the expert reports before reading them, and another disclosed AEO material based on a mistaken reading of the Amended Protective Order. *See generally* ECF Nos. 378-5, 378-6. The Court does not condone the violations of the Amended Protective Order or the actions that led to these violations.

What is equally problematic is that counsel then made inaccurate statements about the scope of the disclosures, and both attorneys failed to immediately correct any misstatements. As discussed above, on August 9, 2024, Ms. Wright stated in an email that "[n]o additional AEO materials have been disclosed to Mr. Ducotey or any other employee of Tank Connection." 383-2 at 3. This was untrue. This was the same day that Mr. Wood instructed his "clients to delete and disregard the expert reports sent on July 30, 2024." ECF No. 378-6 at 1, ¶ 8. Counsel then waited four days—until August 13, 2024—to notify Plaintiff of the disclosure to additional Tank employees. ECF No. 384 at 2.

The following day, August 14, 2024, Ms. Wright sent Plaintiff's counsel a letter confirming that Mr. Ducotey had "deleted any copies of the Engineering Report that were in his possession" and that he had "not shared or disclosed any information in the Engineering Report with any other Tank Connection, LLC employees or anyone else." ECF No. 385-5383-5 at 3. Ms. Wright also stated that her office had "confirmed that these four individuals have deleted the Engineering Report and Financial Report that was shared and have not retained the information in any manner." *Id.* at 4.

These statements, however, were again incorrect. Specifically, Mr. Ducotey's declaration states that he did discuss the Engineering Expert report with other individuals. *See generally* ECF No. 379-1 at 1. And Tank's IT manager's audit logs show that only one individual moved the AEO-designated material to his trash folder on August 9, 2024; even then, the material appears to

17

have remained retrievable by all of the individuals to whom it was disclosed as of August 14, 2024. *See* ECF No. 386 at 3-4 (providing timeline for file access and eventual deletion of materials).

To be clear, there is no evidence that counsel knowingly misrepresented the scope of the disclosures or knowingly made incorrect statements that all Tank employees had deleted the emails at issue. While attorneys for Defendants later voluntarily informed Plaintiff about the scope of the disclosures and elected to provide the audit logs that illustrate counsel's incorrect statements, counsel made definitive statements—that later turned out to be untrue—when counsel clearly lacked a factual basis to make such statements.

Because the Court has found that defense counsel violated the Amended Protective Order, the next question is whether they should be sanctioned for this conduct.

### B.     SANCTIONS FOR VIOLATING THE AMENDED PROTECTIVE ORDER

"Whether under Federal Rule of Civil Procedure 37(b) (for violation of a discovery-related order), Federal Rule of Civil Procedure 16(f) (violation of a pretrial order), or its inherent powers, the court is authorized to exercise its discretion in determining whether to impose sanctions for violations of stipulated protective orders." *Crocs, Inc. v. Joybees, Inc.*, No. 121-CV-02859GPGSBP, 2023 WL 8851997, at *3 (D. Colo. Dec. 8, 2023). An appropriate sanction is "the least severe sanction adequate to deter and punish" misconduct. *White v. Gen. Motors Corp.*, 908 F.2d 675, 684 (10th Cir. 1990); *see also Lawson v. Spirit AeroSystems, Inc.*, No. 18-1100-EFM-ADM, 2020 WL 3475231, at *2 (D. Kan. June 25, 2020) (citing *White* in the context of what is an appropriate sanction for a violation of a protective order).

Defendants argue that sanctions are unwarranted, and Plaintiff argues that it is entitled to an award of $96,967.33 in attorneys' fees. The Court rejects both positions. For the reasons explained below, a public admonishment of Mr. Wood and Ms. Wright is the least severe sanction

to deter and punish, and other circumstances make an award of attorneys' fees unjust in this instance.

### 1.    Public Admonition

In *Lawson v. Spirit AeroSystems, Inc.*, a judge in this District was faced with an analogous issue after a party violated the terms of a protective order by using and quoting a clawed-back document in conjunction with a subsequent filing.  2020 WL 3475231, at *2.  The court ultimately found that counsel's acceptance of responsibility persuaded the court that severe sanctions were unnecessary.  *Id.*  The court also found that "recognition of and admonishment for the mistake was sufficient to deter any further similar misconduct."  *Id.*  The Court reaches the same conclusion in this case.

The Court is satisfied with Defendants' efforts to investigate the violations, as detailed in their Response brief,[5] and the steps taken to guard against further violations, particularly since

---

[5]         Specifically, Defendants explain:

> After being informed of Defendants' Counsel's violation, on or around August 9, 2024, Mr. Banning, Mr. Burke, Mr. LaForge and Mr. Jarman deleted the email with the Expert Reports which was sent by Counsel Wood on July 30, 2024. (*See* Ex. A-D, and Aff. of Caleb Huddleston at Ex. F, F-1). Similarly, on or about August 13, 2024, Mr. Ducotey deleted the email with the Engineering Expert Report, including deletion of his notes he created about the Engineering Expert Report. (*See* Declaration of Steve Ducotey at Ex. E).

> On August 19, 2024, Tank IT Manager Caleb Huddleston ran searches through Tank systems for expert disclosure documents in relation to this lawsuit to provide to Defendants' Counsel to preserve and to ensure all improperly disclosed documents had been deleted and were no longer accessible to Tank employees. (*See* Ex. F). Between August 26, 2024 and August 30, 2024, Mr. Huddleston forced a full backup of Mr. Ducotey's computer and checked the backup files for documents related to the Expert Reports and found no results. *Id.* Subsequently, in or around September 19, 2024, Mr.

discovery in this litigation has concluded, which makes any further violations unlikely. Specifically, counsel have confirmed that Tank and Tank employees do not have access to counsel's electronic document management system or to the electronic discovery platform utilized in this case. ECF No. 378 at 3. Among other things, counsel have instituted a policy whereby two members of the litigation team will review all documents before they are shared with counsel's clients. *Id.* at 4.

The two attorneys of record who were responsible for the unauthorized disclosure of AEO-designated material clearly violated the terms of the Amended Protective Order and collectively waited too long before correcting misstatements made to Plaintiff. But in both discovery conferences with the Magistrate Judge and in the briefing in response to the Show-Cause Order, counsel have taken responsibility for the violations and have put into place procedures to prevent further violations based on their full inquiry into the scope of the disclosure of AEO-designated material. Like the judge in *Lawson*, the Court's admonishment of the conduct is sufficient to deter any further similar violations of the Amended Protective Order, and more severe sanctions are unwarranted.

---

Huddleston began running an audit log through the Tank system to ensure that any emails, documents, or communications discussing the Expert Reports were deleted. *Id.* The audit log (attached to Mr. Huddleston's Affidavit at Ex. F-1), outlines that Mr. Huddleston has confirmed that all versions of the Expert Reports have been deleted from the Tank system, including all emails with the Expert Reports. *Id.*

ECF No. 378 at 2-3.

2. **Reasonable Expenses**

Fed. R. Civ. P. 37(b)(2)(C) requires an award of reasonable expenses, including attorneys' fees, caused by a failure to obey an order to provide or permit discovery "unless the failure was substantially justified or other circumstances make an award of expenses unjust." The rule has been applied in the context of addressing violations of a protective order. *See, e.g., Lawson*, 2020 WL 3475231, at *3.[6] The substantial-justification-or-other-circumstances standard is broad enough that the Court retains discretion in the matter. *See generally* 8B Richard L. Marcus, *Federal Practice and Procedure*, § 2288 (3d ed. June 2024 update) (addressing the reasonable-expenses provisions in Rule 37).

Plaintiff requests that the Court award Plaintiff $96,967.33 for attorneys' fees that Plaintiff states it incurred "to enforce the [protective order]." ECF No. 384 at 8. This figure, on its face, is a stunning number considering the procedural posture of this dispute—no written discovery or depositions have occurred regarding these violations and no curative measures were undertaken by Plaintiff to address any competitive impact caused by the violations.

The Court finds that other circumstances here make an award of expenses unjust in these unique circumstances. As explained in detail throughout this Order, the history of this litigation and the Court's extensive experiences with the myriad of discovery problems throughout this litigation are the bases for the Court's determination that there are other circumstances that make an award of expenses unjust in this specific situation. But even if the Court did not find these other

---

[6] There is a split of authority as to whether all protective orders fit within the scope of Rule 37(b). *See Doe I v. Exxon Mobil Corp.*, 539 F. Supp. 3d 59, 72 (D.D.C. 2021) (acknowledging a circuit split but finding that the rule did apply to a deposition protocol, which provided that discovery may be had on certain terms). Fed. R. Civ. P. 37(b) advisory committee's note to the 1970 amendment makes clear that that "[v]arious rules authorize orders for discovery" and "Rule 37(b)(2) should provide comprehensively for enforcement of all these orders."

circumstances, the Court cannot find that the requested attorneys' fees are reasonable or requested in compliance with the governing authority in this Circuit.

### a.     Other Circumstances

The Court may find that other circumstances make an award unjust for a variety of reasons, including where the party for which fees would be awarded also acted unjustifiably. *See Lawson*, 2020 WL 3475231, at *3 (finding an award of fees unjust because of the discovery history in the litigation and that the party seeking fees failed to fully comply with the protective order); *see also* Fed. R. Civ. P. 37(a)(4) note to the 1970 amendment (discussing identical language used in a different subsection of the same rule and explaining that "[a]t the same time, a necessary flexibility is maintained, since the court retains the power to find that other circumstances make an award of expenses unjust—as where the prevailing party also acted unjustifiably."). The following two circumstances make an award of expenses unjust.

*First*, given the overall history of this litigation and serial discovery disputes, an award of reasonable expenses to one party would prove unjust in this instance. As previously discussed, the Court has convened multiple discovery conferences in this case and noted that "many—if not all—of these conferences could have been avoided if the parties followed the caselaw in this District or truly exhausted their good faith meet-and-confer obligations." ECF No. 276 at 4. As but one example, Plaintiff previously requested an emergency discovery conference at a deposition to request that the Court preclude a party representative from attending the deposition. *See generally* ECF No. 240. The Court denied the request as wholly unsupported. *Id.* at 2 (explaining that "[w]hile an issue arising during a deposition may cut short an otherwise exhaustive legal analysis of an issue, a party requesting a discovery conference still must have an articulable legal basis for any relief sought, regardless of the exigent circumstances").

The Court did not award attorneys' fees in conjunction with that dispute or for any prior discovery disputes in this case. The present dispute is the latest example of the parties' inability to work together to reach reasonable and efficient solutions regarding discovery issues. For these reasons, the Court finds that other circumstances make an award of expenses unjust. *Accord Thomas v. Ackermann*, No. 1:23-CV-00721-RMR-SBP, 2024 WL 2803463, at *21 (D. Colo. May 31, 2024) (stating "it is illustrative of a larger point: when it comes to discovery, no party here—including Mr. Ackermann—is immune from criticism. The court takes that point into account in exercising its broad discretion to decline to award sanctions under Rule 37(a)(5)."); *Knauf Insulation, LLC v. Johns Manville Corp.*, No. 115CV00111WTLMJD, 2019 WL 3766094, at *2 (S.D. Ind. Aug. 8, 2019) (finding the violation was not substantially justified, but declining to award reasonable fees pursuant to Rule 37(a)(5) because "the parties have turned discovery in this case into an exercise akin to the extraction of teeth, often without anesthesia, with the Court being forced by the parties to wield the forceps . . . . The parties should not expect to receive significant compensation for the dental work they are requiring the Court to perform.").

*Second*, even if the Court focused exclusively on this specific discovery dispute, Plaintiff's disproportionate response has needlessly complicated and compounded this discovery dispute.[7] While the Court takes a violation of its orders very seriously, Plaintiff has never alleged that these violations have resulted in any harm. There are no allegations that Defendants: filed any AEO

---

[7] Plaintiff's briefing also demonstrates how Plaintiff's actions have protracted this dispute. As addressed above, Plaintiff initially filed a brief in violation of the Court order limiting Plaintiff's brief to "10 double-spaced pages." ECF No. 374 at 2. Plaintiff later filed an untimely amended brief without leave of the Court, which still violates the spirit of the District's page limits by extensively utilizing single-spaced font. ECF No. 384. This Court routinely imposes page limitations and expedited briefing schedules both to conserve the parties' resources and to enable the Court to rule on disputes quickly. Strict compliance with these orders is important, but these duplicative noncompliant filings unnecessarily wastes both the Court's time and Defendants' time.

material as part of the public record; used the material to compete with Plaintiff; or continued to maintain copies of the information that they have sworn was purged.

The Amended Protective Order broadly defined what the parties could designate as AEO, and so the fact that counsel inadvertently disclosed AEO material is not, standing alone, informative as to the potential consequences or seriousness of the disclosure. Nowhere in Plaintiff's brief does Plaintiff attempt to explain what was so competitively sensitive about the disclosed material.[8] Of course, that does not excuse the violations themselves, but it provides context to explain why Plaintiff's responses to the violations were disproportional.

Specifically, Plaintiff declined to take a single deposition on the issue when defense counsel stated that "discovery is ongoing so we believe you are free to depose who you believe is necessary." ECF No. 383-7 at 1. Plaintiff then waited weeks before emailing the Magistrate Judge's chambers to request a discovery conference regarding its requested sweeping relief, which contemplated multiple motions seeking: expedited discovery; an evidentiary hearing on an anticipated motion for sanctions; a protective order precluding Plaintiff's production of any further confidential materials until resolution of the evidentiary hearing; a court order requiring Defendants to retain "confidentiality counsel" responsible for ensuring compliance with the protective order, and attorneys' fees. After the Court issued its Show-Cause Order, which was intended to comprehensively address the issue of sanctions for any violations of the Amended

---

[8]     The Court will not presume that the mere designation of information as AEO necessarily raises prejudice to Plaintiff. For example, separately in the litigation, Plaintiff declined to file a brief requesting to have other exhibits that referenced AEO-designated material remain under seal. *See generally* ECF No. 442 (denying the motion to seal exhibits and explaining the chronology of briefing).

Protective Order, Plaintiff nonetheless listed in the proposed pretrial order that it contemplated filing yet another motion for sanctions if the Court allowed discovery.

The Court has reviewed the cases Plaintiff cites in support of its request for expenses, but those cases only underscore the various extreme circumstances—none of which are present here—that support a large award of expenses. For example, Plaintiff cites to *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 487 (5th Cir. 2012), stating in a parenthetical in Plaintiff's brief: "affirming full award of attorney's fees and costs which reflect the time investigating the violation, drafting motions to enforce the Protective Order, preparing replies to the Appellants' responses, coordinating and conferring, and attending court hearings[.]" ECF No. 384 at 9. But the conduct in that case is far different than the circumstances before this Court:

> In August 2010, Smith and his firm inadvertently disseminated Cooper's trade secrets and confidential information to a number of personal injury lawyers during a conference sponsored by Attorneys Information Exchange Group, Inc. about obtaining discovery from [defendant Cooper tire]. The release of the confidential information occurred when someone from Smith's firm mistakenly copied it onto compact discs that were then distributed to the attorneys attending the conference. Cooper discovered the violation when its counsel in this case received documents from a plaintiff's attorney in an unrelated suit against Cooper. Many of those documents were marked with Trenado Bates numbers and had been deemed confidential.

*Smith & Fuller*, 685 F.3d at at 487. That court additionally noted that the attorney who violated the protective order had been sanctioned in a different case because he "had previously violated a similar protective order" by distributing confidential information to a different attorney in another state. *Id.* at 488. There, the court awarded fees because "it determined that any lesser penalty would not have been an adequate future deterrent." *Id.* at 490. Those facts, of course, are distinct from this case, where Plaintiff does not allege any previous violations by Defendants or their counsel.

Plaintiff additionally cites to a series of cases in which courts have awarded costs and fees as sanctions, but those cases also underscore why such an award is not warranted here. For example, in *Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 675 (10th Cir. 2012), the Tenth Circuit upheld a sanction order based upon repeated discovery misconduct. As the Tenth Circuit described, the underlying district court ruled on two separate motions to compel, ultimately granting these motions in part and requiring the production of certain documents in response to these motions. *Id.* at 675-76. Ultimately, the district court found that the defendant "violated both the April 12 Order and the April 27 Order." *Id.* at 677. It was at that time that the court awarded attorneys' fees in part because defendant's "'pattern of obstructive discovery behavior ha[d] been pervasive and persistent throughout the entire course of written discovery and detrimental to the function of the judicial process,' and had 'evinced a cavalier disregard for [plaintiff's] rights, the Rules of Civil Procedure governing discovery, and Orders of this Court seeking to enforce those rules.'" *Id.* The Court additionally noted that throughout the course of the highly contested litigation, "[f]or the most part [plaintiff] received its requested relief. *Id.* at 675. That is not the case here, where Plaintiff has unsuccessfully sought Court intervention on a number of issues.

For these reasons, the Court finds that any award of attorneys' fees would be unjust and declines to award attorneys' fees.

**b.      The Reasonableness of Plaintiff's Lodestar**

Even if the Court found that an award of attorneys' fees was just here, the Court would not award Plaintiff the $96,967.33 Plaintiff requests. Whether reviewed in terms of the proposed hourly rates for the type of work performed or the total number of hours, Plaintiff's request is

wholly unreasonable.[9]  This request further underscores Plaintiff's failure to prosecute this litigation in a "just, speedy, and inexpensive" manner, as is required by all parties.  Fed. R. Civ. P. 1.

### i.      Plaintiff's Hourly Rates

In support of Plaintiff's request for more than $96,000 in fees for this relatively narrow dispute, Plaintiff has submitted time from four different out-of-Circuit timekeepers, with hourly rates of $885 for an associate, $1,095 for "counsel," and two partners billing at $1,490.  ECF No. 383-9 at 15.  As is clear in the Tenth Circuit, absent a particularly unusual case, reasonable rates are determined by the prevailing market rates in the area in which the litigation occurs or the court sits.[10]

But Plaintiff failed to undertake any analysis of what a reasonable rate is in this jurisdiction. In the 49-page affidavit submitted in support of the fee request, Plaintiff states only the following:

---

[9]      The Court addresses Plaintiff's hourly rates and hours expended largely because it highlights Plaintiff's disproportionate response to the violations at issue.  If the Court had found that Plaintiff were entitled to its reasonable attorneys' fees, the Court could have determined a reasonable lodestar, which would have been far less than the award Plaintiff seeks.

[10]      "To determine what constitutes a reasonable rate, the district court considers the prevailing market rate in the relevant community." *Lippoldt v. Cole*, 468 F.3d 1204, 1224 (10th Cir. 2006) (internal quotations omitted); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) (same); *Orchestrate HR, Inc. v. Blue Cross & Blue Shield of Kan., Inc.*, No. 19-4007-DDC, 2023 WL 6216307, at *14 (D. Kan. Sept. 25, 2023) (analyzing prevailing rates in this District).  The relevant community is "the area in which the litigation occurs" or "the area in which the court sits." *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983) (overruled on other grounds); *accord Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1256 (10th Cir. 1998).  Unless the case "is so unusual or requires such special skills that only an out-of-state attorney possesses, the fee rates of the local area should be applied even when the lawyers seeking fees are from another area." *Lippoldt*, 468 F.3d at 1225 (internal quotations omitted).  The party seeking fees "must provide evidence of the prevailing market rate for similar services by 'lawyers of reasonably comparable skill, experience, and reputation' in the relevant community." *Id.* at 1224-25 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

> Based on my over ten years practicing as an attorney in the Southern
> California market at two national firms and three smaller Southern
> California firms, I am very familiar with the hourly rates for
> attorneys in Southern California, in particular, the commercial and
> business litigation market.  The above hourly rates reflect the
> prevailing market rate for the attorneys with their level of
> experience.

ECF No. 383-1 at 8.  Other than one attorney's representation that these rates are reasonable in

California, Plaintiff provides no other information supporting the reasonableness of these hourly

rates for these specific attorneys.

But even assuming these are typical rates in California, Plaintiff wholly fails to explain

how these rates are reasonable in this District or in this Circuit.  For example, in addition to the

California attorneys, Plaintiff is represented by local counsel from one of the largest Kansas City

law firms, and yet the entire request for fees is conspicuously silent as to what attorneys at this

firm charge clients in Kansas.

From the Court's extensive knowledge of the legal and factual issues in this case, this is

not the type of case of such complexity that out-of-town counsel was required, and Plaintiff does

not present any arguments to the contrary.  Plaintiff does not cite to any cases that have approved

similar rates in any relevant jurisdiction for attorneys with comparable levels of experience doing

similar work.  There is simply no basis from which the Court can conclude that these are reasonable

hourly rates in this District.

### ii.    Plaintiff's Total Hours

In addition to Plaintiff's failure to address the reasonableness of its rates, the total hours

spent on this issue are not reasonable.  In August 2024 alone, four attorneys purportedly spent 46.7

hours on this issue.  ECF No. 383-1 at 7.  Plaintiff then estimates that an additional 25 hours would

be spent in September 2024, meaning that Plaintiff's attorneys seek to recover attorneys' fees for *71.7 hours* spent on this dispute. *Id.* at 7-8.

The Court has reviewed Plaintiff's billing records. These records reflect that the vast majority of time was spent not on investigating Defendants' violation of the Amended Protective Order, or on any efforts that may have been necessary to cure the violations, but instead on canvasing caselaw looking for a sanction that could apply here. In August 2024, one attorney alone spent 25.6 hours—at $1,095/hour—largely researching "remedies" or possible sanctions for Defendants' conduct. This appears to be a discovery dispute in search of a sanctions motion. Again, there is no doubt that Defendants violated the Amended Protective Order, but this was not an opportunity for Plaintiff to fish for disproportionate ways to react to this violation. While Plaintiff states that "Defendants also have no one to blame but themselves for the amount of fees CST was forced to incur on this issue," ECF No. 384 at 9, the Court strongly disagrees.

### C.     Plaintiff's Request to Take Additional Discovery

In addition to sanctions, Plaintiff also requests that the Court allow Plaintiff to take additional discovery "to determine the underlying facts surrounding Defendants' violations, their impact on CST, and whether additional remedies are warranted." ECF No. 384 at 6. Plaintiff lists five categories of information for which it requests discovery, including "[a] thorough review of Tank's communication platforms (including emails, Gmail chat, and text messages) from July 29, 2024 to the Present utilizing sufficiently broad search terms, such as 'CST' or "expert," to ensure all communications referencing or incorporating AEO materials have been captured, disclosed to the Court and CST, and deleted." *Id.* at 7. In addition to the five categories for which Plaintiff requests discovery, Plaintiff also proposes two requests for production (RFPs) seeking:

> •     Documents     and     Communications     (including communications     involving     counsel)     referencing     the

> information in or attaching the AEO Expert Reports from
> July 29, 2024 to Present.
>
> •      Documents and Communications (including
> communications involving counsel) related to the potential
> violation of the PO from August 6, 2024 to Present.

*Id.* Presumably in recognition of the broad scope of the proposed discovery, Plaintiff suggests that to "prevent disclosure of privileged materials unrelated to this issue, CST proposes that any attorney-client communications responsive to the forgoing document requests be submitted to the Court for an *in camera* review prior to production." *Id.* at 7.

In evaluating the request for discovery, the Court looks to Federal Rule of Civil Procedure 26(b), which defines the scope of discovery and specifies that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Relevance is broadly construed to "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Coe v. Cross-Lines Ret. Ctr., Inc.*, 342 F.R.D. 539, 545 (D. Kan. 2022) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

Rule 26(b) sets forth a list of factors the Court may consider in evaluating proportionality, including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." The parties do not address any proportionality considerations. Nevertheless, the Court has an independent and ongoing obligation to ensure proportional discovery. *See Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB-ADM, 2020 WL 374685, at *5 n.5 (D. Kan. Jan. 23, 2020) (citing Fed. R. Civ. P. 26(b)(2)(C), Fed. R. Civ. P. 26 advisory committee's notes to the 2015 amendment and case law).

The proposed discovery is potentially relevant to the issue of sanctions, but it is not relevant to the claims or defenses in this case, and it is disproportional to the needs of the case. Beginning first with relevance, Plaintiff explains that it requires this discovery to "ascertain the true facts" surrounding the violations, which may be relevant to "whether additional remedies are warranted." ECF No. 384 at 5-6. At most, the proposed discovery is relevant to a collateral issue—the issue of sanctions—which is the issue already before the Court. At best, the proposed discovery is marginally relevant.

Despite its marginal relevance, the proposed discovery is disproportional to the needs of the case. The parties have not briefed proportionality and several of the proportionality considerations are more applicable when the proposed discovery is aimed at claims and defenses— e.g., "the importance of the issues at stake in the action." Fed. R. Civ. Proc. 26(b)(1). Nevertheless, two of the proportionality considerations are determinative. Specifically, (1) the importance of the proposed discovery in resolving any issues is speculative at best, and (2) the burden of the proposed discovery would almost certainly outweigh any benefit.

*First*, as explained above, the proposed discovery's only potential relevance would be to a further sanctions motion. After review of the entirety of the briefing, including extensive supporting documentation, the Court can rule on the issue of sanctions without needing any additional information regarding the chronology of events or the steps taken by counsel to guard against further disclosure of AEO-designated material.

Although Plaintiff argues that it requires this additional discovery to understand the scope of the violations, Plaintiff does not explain any timely efforts to obtain this discovery. Specifically, in Defendants' August 19, 2024 letter, defense counsel stated that that "discovery is ongoing so we believe you are free to depose who you believe is necessary." ECF No. 383-7 at 1. Even

though Defendants appeared open to depositions, Plaintiff never noticed a single deposition and apparently failed to have any further discussions with Defendants regarding Plaintiff's request to take expedited discovery. After this communication, Plaintiff then inexplicably waited three more weeks before contacting the Magistrate Judge's chambers on September 11, 2024, regarding its request to take expedited discovery.

After the discovery conference, the Court ordered the parties again to meet and confer and strongly encouraged Plaintiff to email Defendants "*in advance of the videoconference* to specify what, if any, information it requests." ECF No. 374 at 2 (emphasis added). According to the email exchange between counsel filed as an exhibit to the briefing, it does not appear that Plaintiff emailed Defendants in advance of the videoconference to specify what discovery it required— discovery Plaintiff now contends is crucial. *See* ECF No. 378-7 (containing email exchange among counsel).

*Second*, the burden of the proposed discovery would almost certainly outweigh any benefit. Despite having months to fashion narrowly tailored and targeted discovery requests, Plaintiff proposes discovery regarding five separate categories of information and requests leave to serve two RFPs that, on their face, call for the production of attorney-client privileged communications. ECF No. 384 at 7 (expressly stating that the RFPs include "communications involving counsel"). In recognition of this, Plaintiff proposes that to "prevent disclosure of privileged materials unrelated to this issue," the Court should conduct an in-camera review of all responsive attorney-client communications. *Id.* Plaintiff does not state, however, what it believes the proper outcome is with respect privileged documents that are related to the issue of the violations of the Amended Protective Order. The broad nature of the proposed discovery on a collateral matter would almost

32

certainly spin off into additional protracted discovery disputes given both the nature of the proposed discovery and the parties' difficulty in working cooperatively throughout discovery.

Additionally, submitting responsive documents to the Court for an in-camera review as a first step is a process that is not in compliance with this District's case law or local rules. As a starting point, RFPs should not be facially objectionable. *See generally Orchestrate HR, Inc. v. Blue Cross & Blue Shield of Kansas, Inc*., No. 19-4007-DDC, 2023 WL 6216307, at *5 (D. Kan. Sept. 25, 2023) (evaluating whether a party's position was substantially justified and addressing a facially objectionable definition section that encompassed privileged communication). The Scheduling Order put the parties on notice that a party "withholding responsive information on the basis of privilege must timely serve a privilege log consistent with Fed. R. Civ. P. 26(b)(5)(A) and the case law in this District." ECF No. 19 at 6, ¶ g. After that, this District's local rules require the parties to meet and confer in good faith regarding discovery disputes before requesting a pre-motion discovery conference with the assigned Magistrate Judge. D. Kan. Rule 37.2; D. Kan. Rule 37.1(a). If briefing is necessary—as is often the case with respect to attorney-client privilege objections—the Court would then impose a briefing schedule for a motion to compel.

Plaintiff cites a single out-of-district case in support of its request to take discovery, but that case is factually distinguishable. ECF No. 384 at 5-7. Plaintiff relies on *Tristar Prod., Inc. v. Zhongshan Fengye Elec. Appliances Co.*, No. 3:20CV6017/MCR/EMT, 2022 WL 1624111 (N.D. Fla. Mar. 16, 2022), for the proposition that courts allow "for limited discovery to ascertain the true facts" surrounding a violation of a court order. *Id.* at 5. In that case, plaintiff filed a motion for contempt, alleging the defendant violated the court's preliminary injunction order, which included prohibiting defendant from continuing to list certain products on Amazon.com. *See Tristar* 2022 WL 1624111 at *2. In support of the motion, the plaintiff provided screenshots

showing that the products were still active on Amazon.com.  *Id.*  The defendant did not respond to the motion, and the court stated that "Defendant's failure to respond to Plaintiff's motion for sanctions, timely or otherwise, is alone a sufficient ground on which to grant the motion and, correspondingly, find Defendant in civil contempt of this court."  *Id.* at *1, *3.  In light of defendant's failure to respond to the motion, the court had "insufficient information before it on which to impose or implement the sanctions Plaintiff seeks," and therefore permitted plaintiff "to conduct limited discovery," which included third-party subpoenas to determine the extent of defendant's ongoing sales and the revenue and profit generated by those sales.  *Id.* at *4-*5.

There is no analogous situation here.  Defendants provided robust information regarding their violations of the Amended Protective Order, including affidavits from key individuals and counsel and other supporting information regarding the scope of the violations, their efforts to cure the violations, and procedures counsel have implemented to guard against any further disclosures. And there are no corresponding arguments that Defendants are continuing to violate the Amended Protective Order or that Defendants have or are currently using this improperly disclosed information in any capacity.

Because the discovery is only marginally relevant to a collateral issue and is otherwise disproportional to the needs of the case, the Court denies Plaintiff's request to take expedited discovery.

## III.     CONCLUSION

For the reasons explained above, the Court finds that public censure is the appropriate sanction, other circumstances make an award of reasonable expenses unjust, and Plaintiff's proposed discovery is disproportional to the needs of the case at this late stage.

**IT IS SO ORDERED.**

Dated: February 28, 2025, at Topeka, Kansas.

/s/ Rachel E. Schwartz
Rachel E. Schwartz
United States Magistrate Judge