IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CST INDUSTRIES, INC.,

 Plaintiff,

v.

TANK CONNECTION, L.L.C., et al.,

 Defendants.

Case No. 23-2339-JAR-RES

**MEMORANDUM AND ORDER**

  This case involves two business rivals seeking to become the roof subcontractor for a large municipal project involving the City of Richmond, Virginia's drinking water reservoir. Plaintiff CST Industries, Inc. ("CST") brings claims against its competitor Tank Connection, L.L.C. ("Tank"); Tank's Liquid Market Manager, Jordan LaForge; and the project's general contractor, Crowder Construction, Inc. ("Crowder"). The claims are tortious interference with a contract against Tank; tortious interference with a business expectancy against Tank and LaForge; unfair competition against Tank, LaForge, and Crowder; and civil conspiracy against Tank and Crowder. The Court granted summary judgment for Crowder, Tank, and LaForge on all claims. Now before the Court is CST's Motion to Alter or Amend Judgment (Doc. 531). The motion is fully briefed, and the Court is prepared to rule. For the reasons explained below, the Court denies the motion.

**I. Standard**

  Under Rule 59(e), grounds warranting a motion to alter or amend judgment include: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to

correct clear error or prevent manifest injustice.[1]  And when a movant chooses the third route—as CST has done here—they embark on a difficult path.  The movant must show that the district court committed a "clear error of judgment"[2]—that is, "the court has misapprehended the facts, a party's position, or the controlling law."[3]  But such a motion does not permit a losing party to rehash arguments previously addressed or to present new legal theories or facts that could have been raised earlier.[4]  So a party's failure to present its strongest case in the first instance does not entitle it to a second chance in the form of a motion to reconsider.[5]  Whether to grant a motion to reconsider is left to the Court's discretion.[6]

## II. Discussion

CST moves for reconsideration of the Court's order granting summary judgment on each of its claims.  The Court granted summary judgment because CST had failed to show a genuine dispute of material fact on essential elements of its claims.  On the unfair-competition claim (which was based on a deceptive-marketing theory), CST failed to show that Crowder, Tank, or LaForge passed off CST's services as their own; on the claim for tortious interference with a business expectancy, it failed to show a valid business expectancy with the City; on the claim for tortious interference with a contract, it failed to show that Tank employed improper means to induce the breach; and on the civil-conspiracy claim, it failed to show an underlying wrong.  In

---

[1] *Servants of Paracelete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)).

[2] *Wright ex rel. Trust Co. of Kan. v. Abbott Laby's, Inc.*, 259 F.3d 1226, 1235–36 (10th Cir. 2001) (internal quotation marks omitted) (quoting *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997)).

[3] *Id.*

[4] *Steele v. Young,* 11 F.3d 1518, 1520 n.1 (10th Cir.1993); *see also* 11 *Wright & Miller's Federal Practice & Procedure* § 2810.1 (3d ed. 2012) ("The Rule 59(e) motion may not be used . . . to raise arguments or present evidence that could have been raised prior to the entry of judgment.").

[5] *Turner v. Nat'l Council of State Bds. of Nursing, Inc.*, No. 11-2059, 2013 WL 139750, at *1–2 (D. Kan. Jan. 10, 2013), *aff'd*, 191 F. App'x 822 (10th Cir. 2006)).

[6] *Coffeyville Res. Refin. & Mktg., LLC v. Liberty Surplus Ins.*, 748 F. Supp. 2d 1261, 1264 (D. Kan. 2010).

response, CST raises the follow points of error: (1) an unfair-competition claim does not require "passing off" another's services as one's own; (2) CST's claim for tortious interference with a business expectancy was supported by a valid business expectancy with both the City and with Crowder; (3) Tank's inducement to breach a restrictive covenant is itself an improper means to breach that restrictive covenant; and (4) assuming that the claims remain viable, they satisfy the underlying-wrong requirement for civil conspiracy.

But on none of those points does CST show that the Court committed a clear error of judgment by misapprehending CST's facts or arguments. Instead, having failed on its first attempt to defend against summary judgment, CST seeks a second chance to "revisit issues already addressed [and] advance arguments that could have been raised in prior briefing."[7] The Court therefore denies CST's motion for reconsideration.

### A. *Unfair Competition*

CST argues that the Court erroneously granted summary judgment on its unfair-competition claims against Crowder, Tank, and LaForge.

*First*, the claim against Tank and LaForge. In its response to Tank and LaForge's motion for summary judgment, CST argued Tank and LaForge committed unfair competition by (1) "misleading the City regarding Ducotey's prior experience . . . while employed by CST"[8] and (2) "improper[ly] procur[ing] . . . CST's business information."[9] CST argued further that unfair

---

[7] *Ward v. Wesley Med. Ctr., LLC*, No. 23-1091, 2024 WL 989880, at *2 (D. Kan. Mar. 7, 2024) (quoting *Paliwoda v. Showman*, No. 12-2740, 2014 WL 11517806, at *1 (D. Kan. Sept. 30, 2014)). CST of course characterizes the Court's errors as misapprehensions of the arguments. But its brief does not show how the Court misapprehended the arguments; it just raises the same (or even new) arguments from summary judgment. So, for example, CST relies on cases from its summary-judgment briefing to show that inducing an employee to breach a restrictive covenant satisfies the improper-means requirement. *See* Doc. 531 at 15. But CST makes no argument that the Court misapprehended the argument or misunderstood those cases; CST just says that the Court should not have "disagreed with those cases." *Id.*

[8] Doc. 482 at 26.

[9] *Id.* at 44.

competition based on the misrepresentation was supported by a deceptive-marketing theory, and the unfair competition based on improper procurement of CST's business information was supported by the "residual category" of liability in section 1 of the Restatement (Third) of Unfair Competition ("Restatement").[10] CST seeks reconsideration on each ground; the Court addresses each in turn.

The Court granted judgment for Tank and LaForge because CST failed to show an essential element of its deceptive-marketing theory—that any of the defendants made a representation passing off CST's services as their own.[11] CST now says that was error because a deceptive-marketing claim does not require passing off another's services. In making that argument, it seeks to shore up its weak argument at summary judgment—an impermissible ground for reconsideration.

Tank and LaForge moved for summary judgment on the unfair-competition claim because CST could not show that Tank or LaForge attempted to pass off CST's projects as their own. They explained the law, noting that "[u]nder Missouri law, unfair competition 'consists, essentially, in passing off or attempting to pass off' another's goods or services as one's own.[12] And they reiterated that liability for unfair competition arises where a defendant "makes a representation likely to deceive or mislead prospective purchasers by causing the mistaken belief that the actor's business is the business of the other."[13] Then Tank and LaForge applied that law

---

[10] *See* Restatement (Third) of Unfair Competition § 1 (A.L.I. 1995).

[11] Doc. 528 at 18.

[12] Doc. 418 at 39 (quoting *Nat'l Motor Club of Mo., Inc. v. Noe*, 475 S.W.2d 16, 19 (Mo. 1972)).

[13] *Id.* (quoting *Am. Equity Mortg., Inc. v. Vinson*, 371 S.W.3d 62, 64 (Mo. Ct. App. 2012)).

4

here. They explained that no third party "believe[d] that Tank was claiming responsibility for CST projects," and they did not "make claims that Tank was responsible for CST projects."[14]

CST did not counter that argument; it chose to ignore it. It recited the Restatement's general principle that a party may be liable for unfair competition under a deceptive-marketing theory if (1) they make a representation about its services that would likely mislead another and (2) plaintiff suffered commercial detriment as a result. But that general statement does not address the more specific issue of whether the misrepresentation required by the Restatement must pass off another's services—the issue addressed by Tank and LaForge's cases. And more to the point, CST did not persuasively argue why this Court (assuming that the Restatement answered the specific question) should follow the Restatement, even if it meant ignoring the Missouri cases cited by Tank and LaForge—one of which is a Missouri Supreme Court case and thus binding on this Court.[15]

In its response to Tank and LaForge's motion for summary judgment, CST explained that Missouri courts look to the Restatement to ascertain the boundaries of an unfair-competition claim.[16] And they do.[17] But even CST's cited case, which looked to the Restatement for guidance on deceptive marketing's general principle, explained that "a claim for unfair competition is 'established by showing that one party is "passing off" his product as that of another so that the public is deceived regarding the source of the goods.'"[18] The court then

---

[14] *Id.* at 40.

[15] *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).

[16] Doc. 482 at 26.

[17] *See, e.g.*, *Doe v. TCI Cablevision*, 110 S.W.3d 363, 369 (2003) (looking to the Restatement (Third) of Unfair Competition to determine contours of tort claim)

[18] *Quickdine.com, Inc. v. Doordash, Inc.*, No. 18-CV-3401, 2019 WL 13210592, at *2 (W.D. Mo. Feb. 21, 2019) (quoting *Bass Buster, Inc. v. Gapen Mfg., Co.*, 420 F. Supp. 144, 160 (W.D. Mo. 1976)).

declined to dismiss the plaintiff's deceptive-marketing claim because it had plausibly alleged a deceptive representation—that the defendant made misrepresentations "that were intentionally designed to trick customers into thinking they were created by [another]."[19] Two of CST's other cited cases justified a deceptive-marketing claim with passing off,[20] and its last case did not even address whether a deceptive-marketing claim can succeed without passing off.[21]

Now CST marshals several cases and comments in the Restatement—not raised on summary judgment—that deceptive marketing encompasses misrepresentations broader than just passing off. But because a motion to reconsider is not "a second opportunity for the losing party to make its strongest case,"[22] the Court rejects this ground for reconsideration.

Of course, CST did not need to rely on a deceptive-marketing theory for Tank and LaForge's alleged misrepresentations. It had at least one other option open to it: a residual-category theory.[23] And now that CST failed on its deceptive-marketing theory, it pivots to this alternative. The Court agrees that the Restatement recognizes liability for unfair competition claims under a residual category of liability. But CST did not raise that theory at summary judgment to support liability for the misrepresentations. And now, having decided to pass over that chance, it cannot receive a second chance to raise the argument.

---

[19] *Id.*

[20] *See Am. Equity Mortg., Inc. v. Vinson*, 371 S.W.3d 62, 64–65 (Mo. Ct. App. 2012) (explaining that passing off supports deceptive marketing); *Am. Traffic Sols., Inc. v. B & W Sensors, LLC*, No. 13CV0229, 2014 WL 1272509, at *7 (E.D. Mo. Mar. 27, 2014) (finding plaintiff stated a claim for unfair competition because, in part, it alleged "Defendant falsely represented that Defendant, rather than Plaintiff, developed the . . . technology").

[21] *Sales Res., Inc. v. Alliance Foods, Inc.*, No. 08cv0732, 2009 WL 2382365, at *7 (E.D. Mo. July 30, 2009) (declining to address whether passing off is required for deceptive marketing because "[n]either party provide[d] the Court with clear authority for their respective positions"). CST's own motion for summary judgment also described an unfair-competition claim as "aim[ing] to effect honesty among competitors by outlawing all attempts *to trade on another's reputation*." Doc. 411 at 27 (emphasis added).

[22] *Harjo v. Greeley*, No. 07-CV-184, 2008 WL 2268348, at *1 (E.D. Okla. June 2, 2008) (internal quotation marks omitted) (quoting *Voelkel v. Gen. Motors Corp.*, 846 F. Supp. 1482, 1483 (D. Kan. 1994)).

[23] Restatement (Third) of Unfair Competition, § 1(a) (A.L.I. 1995) (imposing liability for acts not falling within §1(a)(1)–(3)).

CST's alternative ground for unfair competition—Tank's improper procurement of CST's business information—also failed because CST did nothing to develop its residual-category theory of unfair competition. The Restatement explains that liability for unfair competition may arise even if it does not fall into one of the enumerated categories if an act is "determined to be actionable as an unfair method of competition, taking into account the nature of the conduct and its likely effect on both the person seeking relief and the public."[24] CST did little to show that improper procurement of information is actionable; all it did was offer a single paragraph containing inapposite, unpersuasive citations.[25] Indeed, to show that Missouri imposes liability for improper use of confidential information, CST cited no Missouri law; it cited a practitioner-authored guidebook to trade-secret law. And even now, CST cites no on-point Missouri law supporting its argument and, in fact, pivots to an even stranger source for support—Oklahoma law.[26] The Court denies CST's motion to alter or amend judgment on the unfair-competition claims against Tank and LaForge.

*Second*, the claim against Crowder. CST argued that Crowder committed unfair competition through deceptive marketing. But because CST failed to show that Crowder made a representation about its own services attempting to pass off CST's services as its own (or vice versa), the Court granted summary judgment for Crowder. Now, CST seeks reconsideration of that ruling because, it argues, unfair competition based on deceptive marketing does not require passing off. The Court has already rejected that argument above and explained its reasons for doing so.

---

[24] *Id.*; *see also id.* cmt. g ("Subsection (a) . . . includes a residual category encompassing other business practices deemed to be unfair.").

[25] *See* Doc. 482 at 44–45.

[26] Doc. 531 at 11.

CST has not shown that the Court misapprehended its arguments at summary judgment or otherwise committed a clear error of judgment by granting summary judgment for the Defendants on this claim.

### B. *Tortious Interference with a Business Expectancy*

CST also argues that the Court erred when it granted summary judgment for Tank and LaForge on the claim for tortious interference with a business expectancy. CST contends that the Court wrongly concluded that CST did not have a valid business expectancy. In its Order, the Court explained that CST (though not clear on this point) characterized its business expectancy as being with the City, not Crowder.[27] And because the City did not actually confer the financial benefit—that is, the business expectancy of being awarded the subcontract—and CST offered no case that liability is imposed for interfering with a business expectancy where the third party did not actually confer the financial benefit, the Court concluded that CST failed to show an essential element of its claim.

CST takes issue with two aspects of the Court's ruling—the Court's decision on *who* CST's expectancy was with and *whether* CST could have a valid business expectancy with that party. The Court concluded that CST claimed a business expectancy with the City. But CST argues that it claimed a business expectancy not only with the City but also with Crowder. That argument, however, seeks to rehash points already addressed in the Court's order. As explained there, CST remained at best ambiguous about who exactly its business expectancy was with. Yes, CST's brief said that it had an expectancy to "work with Crowder and the City."[28] But as the Court explained, the rest of the briefing equivocated on that point.[29] The Pretrial Order,

---

[27] Doc. 528 at 15–16.

[28] Doc. 482 at 36.

[29] Doc. 528 at 15.

8

however, did not; it clarified that the expectancy lay with the City: "Tank Connection interfered with CST's business relationships and expectancies *with the City of Richmond*."[30] And though CST submits that using the plural "relationships" implies relationships with both the City and Crowder, the Pretrial Order elsewhere drops the plural: "LaForge interfered with CST's business relationship and expectancy *with the City of Richmond*."[31] The Court took CST at its word and, recognizing that a pretrial order controls the course of litigation and that "issues . . . not included in the pretrial order are waived,"[32] concluded that CST's claim was limited to an expectancy with the City.

Next the Court concluded that CST did not have a valid business expectancy with the City. Once more, CST equivocated on exactly what this expectancy was.[33] But the Court

---

[30] Doc. 397 at 28.

[31] *Id.* CST points out that Tank and LaForge must have understood CST to claim a business expectancy with Crowder, too, because Tank and LaForge contend in the Pretrial Order that they "did not interfere with CST's business expectancy with Crowder." Doc. 398 at 30. That may be. But it does not change the import of CST's decision to explicitly limit its claim to a business expectancy "with the City of Richmond." "Counsel bears the burden to ensure the accuracy of the parties' positions on facts, legal theories, and other matters." *Swearingen v. Pleasanton Unified Sch. Dist. 334*, 641 F. Supp. 3d 1141, 1164 (D. Kan. 2022) (quoting *Turner v. Unified Gov't of Wyandotte Cnty./Kan. City*, No. 18-2202, 2020 WL 1888837, at *2 (D. Kan. Apr. 16, 2020)). And although the Court must liberally construe the pretrial order "to cover any of the legal or factual theories *that might be embraced by [its] language*," *Zenith Petro. Corp. v. Steerman*, 656 F. App'x 885, 887 (10th Cir. 2016) (emphasis added) (quoting *Trujillo v. Uniroyal Corp.*, 608 F.2d 815, 818 (10th Cir. 1979)), the Pretrial Order's language here—restricted as it is to an expectancy "with the City of Richmond"—does not reasonably embrace an expectancy with Crowder. Relying on that assertion, Tank and LaForge moved for summary judgment on the basis that CST did not have a business expectancy with the City, *see* Doc. 418 at 34, and it fended off CST's cross-motion for summary judgment with the same argument. CST "cannot escape the binding effect of the pretrial order by raising new issues in a response to [Tank and LaForge's] motion for summary judgment." *Hullman*, 950 F.2d at 667.

[32] *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002); *see also W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 19 (Mo. 2012) ("A probable future business relationship that gives rise *to a reasonable expectancy of financial benefit is enough*." (emphasis added) (internal quotation marks omitted) (quoting *Stehno v. Sprint Spectrum, L.P.*, 186 S.W.3d 247, 251 (Mo. 2006))).

[33] In the Pretrial Order it was an expectancy "concerning the Byrd Park Project," *see* Doc. 398 at 30; in its cross motion for summary judgment, it is was an expectancy "in the Byrd Park Project" and an expectancy of "obtaining the Byrd Park Project," *see* Doc. 411 at 30. Its response to Tank and LaForge's summary judgment motion is the clearest: "CST had a valid business expectancy of receiving the roofing subcontract on the Project." Doc. 482 at 35; *see also id.* ("CST had a reasonabl[e] business expectancy to be selected as the . . . subcontractor."). And, because it would be selected as the subcontractor, it had an expectancy to "work with Crowder and the City" to perform the subcontract. *Id.* at 36. The Court understood CST to claim award of the subcontract as the valid business expectancy. Doc. 528 at 16.

concluded that CST viewed the expectancy as the award of the subcontract.[34] And because the City did not award the subcontract, CST could not have a valid business expectancy with the City. But CST argues here, as it did in its summary-judgment briefing, that showing a valid business expectancy with a certain party does not require that the party confer the financial benefit—that is, the expectancy—so that CST could still have a valid business expectancy with the City, even though it did not award the subcontract. But this argument misunderstands what interest the business-expectancy tort protects: it protects against "the defendant's interference with a reasonable expectancy of future financial benefit."[35] And that expectancy arises from the relationship between the plaintiff and third party: "that relationship must have had a reasonable probability of resulting in a contract or other economic benefit."[36] And why would the relationship result in that? Because the third party will confer the financial benefit.[37] This point becomes clearer when considering the Restatement's distinction between liability for interference with a contract and interference with a business expectancy. "If the breach [of the contract] was caused by the interference of someone else," then the remedy is a claim for tortious interference with a contract; but if "the plaintiff was in the process of entering a contract but did not conclude it," then the remedy comes from tortious interference with a business expectancy.[38] That comparison clarifies that both varieties of claim contemplate receiving some performance from the other party—that is, conferring a financial benefit or some "economic benefit."[39]

---

[34] Doc. 528 at 16.

[35] *Creative Compounds, LLC v. ThermoLife Int'l, LLC*, 669 S.W.3d 330, 340 (Mo. Ct. App. 2023).

[36] Restatement (Third) of Torts § 18 cmt. d (A.L.I. 2020) (discussing tort liability for "interference with economic expectation").

[37] The Court's Order lays out cases that focus on the financial benefit conferred by the third party. *See* Doc. 528 at 16 n.65. The Order also distinguishes the cases CST relies on. *Id.* at 16–17.

[38] Restatement (Third) of Torts § 17 cmt. b (A.L.I. 2020).

[39] The Restatement (Second) of Torts § 766B (A.L.I. 1979), which corresponds to section 18 of the Third Restatement, *see* Restatement (Third) of Torts, § 18 cmt. a. (A.L.I. 2020), makes a similar point. It lists the various

And CST's argument from *Bell v. May Department Stores Co.*[40] is misplaced. Setting aside that CST did not raise this argument at summary judgment (which alone would be reason not to consider it here), CST overreads *Bell*. CST suggests that *Bell* held that a specific third party does not need to confer a financial benefit to show a valid business expectancy. The issue before the Missouri Supreme Court was whether a credit applicant could have a reasonable expectation of receiving credit even though he had not yet applied for credit with a specific creditor. The court said yes, so long as he expected to apply for credit with some creditor.[41] So *Bell* addresses a timing issue—a valid expectancy could arise before or after the credit application. But that holding does not go so far as to say that whomever the applicant expected to apply with need not confer a financial benefit—that is, extend credit. A holding that broad would contemplate (as apparently CST does) the applicant's having a valid expectancy of credit even where the other party was not in the business of extending credit. Applied here, that would mean CST had a valid business expectancy of being awarded the subcontract by the City, even though the City held no responsibility to award the subcontract.[42]

CST has not shown that the Court committed a clear error of judgment by granting summary judgment for Tank and LaForge on this claim.

---

types of "relations protected against intentional interference": "any . . . relations leading to potentially profitable contracts." Restatement (Second) of Torts § 766B (A.L.I. 1979) cmt. c.

[40] 6 S.W.3d 871, 877 (Mo. 1999).

[41] *Id.*

[42] *See* Doc. 528 at 16.

### C. *Tortious Interference with a Contract* and *Civil Conspiracy*

Once more CST brings an argument the Court already rejected. Tank argued—and CST did not dispute[43]—that a claim for tortious interference with a contract requires that the defendant use improper means to induce the breach. Tank then asserted that CST had failed to show that Tank used improper means. The Court agreed, and it explained why CST's cited cases were unpersuasive. Now, though acknowledging that the Court disagreed with those cases, CST contends that the Court should not have disregarded them and rehashes the same arguments it made in its summary-judgment briefing. As stated before, a motion for reconsideration is not an opportunity to relitigate the same issues already ruled on.

CST also argues that the Court erred in granting judgment on the civil-conspiracy claim. But because a civil-conspiracy claim must be based on a viable underlying claim—and there is none here—the Court did not err in granting judgment for Defendants on this claim.

## III. Conclusion

The common denominator with all of CST's arguments for reconsideration is that they are inappropriate bases to alter or amend the judgment under Rule 59(e). Either the Court has already rejected them the first time around and CST wants a second chance to develop the arguments, or CST never made them and wants to raise them now. So CST's motion does not show that the Court misapprehended the arguments CST made in its briefing—the clear error of judgment that Rule 59(e) requires.

**IT IS THEREFORE ORDERED BY THE COURT** that CST's Motion to Alter or Amend Judgment (Doc. 531) is **denied**.

**IT IS SO ORDERED.**

---

[43] *See* Doc. 482 at 43; *see Sturdivant v. Fine*, 22 F.4th 930, 936 & n.6 (10th Cir. 2022) (accepting "the parties' agreement" on the governing elements, even if those elements do not "invariably govern[]" (alteration in original) (quoting *United States v. Dominguez*, 998 F.3d 1094, 1110 n.10 (10th Cir. 2021))).

13

Dated: July 1, 2025

                                              S/ Julie A. Robinson
                                              JULIE A. ROBINSON
                                              UNITED STATES DISTRICT JUDGE